IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| BELINDA GAIL BROWN, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | CIVIL ACTION: 3:06cv00710-MHT |
| | ) | |
| LIBERTY MUTUAL INSURANCE | ) | |
| COMPANY, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

**PLAINTIFF'S EVIDENTIARY SUBMISSION ON BEHALF OF
ITS RESPONSE TO MOTION FOR SUMMARY JUDGMENT
FILED BY DEFENDANT, LIBERTY MUTUAL INSURANCE COMPANY**

Exhibits 1-31

Affidavit of Oliver Kitchens, Esq.

s/Stephen D. Heninger
Stephen D. Heninger
Attorney for: Plaintiff
Heninger Garrison Davis, LLC
P. O. Box 11310
Birmingham, Alabama 35202
Telephone:    205.326.3336
Facsimile:    205.326.3332
E-mail:    Steve@hgdlawfirm.com
[ASB5227E68S]

**CERTIFICATE OF SERVICE**

I hereby certify that on May 24, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Richard B. Garrett, Esq.
RUSHTON, STAKELY, JOHNSTON
 & GARRETT, P.A.

P. O. Box 270
Montgomery, Alabama 36101-0270
Telephone:    334.206.3100
Facsimile:    334.263.4157
E-Mail:        rbg@rsjg.com

s/Stephen D. Heninger
Stephen D. Heninger [ASB5227E68S]

# EXHIBIT "1"

I spoke with Dr. Moore. He feels pt. has EMG changes with chronic denervation and scar tissue so that no further surgery will help her. He is fairly adamant that she has a fairly serious problem and needs the stimulator to allow her to exercise at all, and that rehab would better be attempted after the stimulator. (He believes she is not a candidate for TIRR.) He further stated that she had been approved by the psychologist that Liberty sent her to and she is on the schedule at this time since it was also "approved by Liberty." I will contact CCM to inquire if SCS was approved. Also, peer review suggests multiple injections that are different from numerous injections pt. has had and weaning narcotics. If we haven't approved yet, we could get a QME, but, at least, she needs to complete a SCS trial before it is inserted. (This may be why she is "on the schedule.") email to CCM/NCM

| Topic: Medical | Title: RMD Phone Provider |
|---|---|
| Created By: MURPHY, ELIZABETH V. | Modified By: |
| Created On: 03/09/2006 | Modified On: |
| Associated Document: N | |

Journal Entry:

I called Dr. Moore and left message. He had returned my call.

| Topic: Medical | Title: HEMT Progressive 3/7/06 |
|---|---|
| Created By: BERRYHILL, VACOVA M. | Modified By: |
| Created On: 03/08/2006 | Modified On: |
| Associated Document: N | |

Journal Entry:

In the process of trying to convert this claimant to home
  delivery I discovered that the phone number we have on file,
          256-357-4145, is incorrect.  Do you have updated contact
          information for this claimant?

          Thanks!

          Jessicca Russell
          Client Services Specialist II
          Pharmacy Customer Service Department
          Progressive Medical, Inc.
          1-800-777-3574 ext. 2284
          jessicca.russell@progressive-medical.com

| Topic: Medical | Title: RMD / HEMT authorization |
|---|---|
| Created By: MURPHY, ELIZABETH V. | Modified By: |
| Created On: 02/27/2006 | Modified On: |
| Associated Document: N | |

Journal Entry:

I reviewed about 20 pages of faxed materials and RMD consult request. I also discussed case with TCS.

Pt is a 49 YO manufacturing worker who injured her back with heavy lifting in 1993. She has undergone 2 spine surgeries but still has chronic pain despite multiple narcotic pain meds including Oxycontin 120 mg/day and Loricet 40 mg/day. Her PTP, a pain doctor who is an anesthesiologist, recently suggested SCS. UM denied because pt. hadn't failed conservative therapy. DQME who was a psychologist from University of Alabama, Birmingham, advised pt. would be a "good candidate psychologically. At issue here, is that if, after failing conservative therapy, the pt. becomes a candidate for SCS, we are happy to know that she might be a good candidate for a SCS trial. However, as stated by UM, pt. has not had facet blocks, comprehensive rehab or other methods of conservative care that will help her restore function and let her avoid the risks of SCS. I believe that ACOEM strongly supports functional restoration and

multidisciplinary pain management and that this is what should be offered to this pt. Her TCS agrees that she would be willing to send this pt. to TIRR in Texas for evaluation and treatment. I called pt.'s PTP and left message with Barbara for Dr. Moore to return my call.

Recommendations:
1. No SCS to be authorized at this time as UM correct that pt. has not failed conservative care.
2. Offer The Institute for Rehabilitation and Restoration (TIRR) program to the pt. Website is at www.TIRR.org if she would like to evaluate.
3. I will speak to PTP about referring to this program.
4. Dr. Ervin Moore (770)479-2322. TIRR program is at (713) 622-2411. Dr. Moore would speak to Tammy Taylor.
5. Re-consult as needed.

| Topic: Medical | Title: HEMT-NCM- Medical LCE Evaluation |
|---|---|
| Created By: MINTON,DONNA L | Modified By: |
| Created On: 02/23/2006 | Modified On: |
| Associated Document: N | |

Journal Entry:

This 48 yr old female has a remaining life expectancy of 33.9 yrs. Medical expenses have increased over the past 2 yrs totaling an average of $19,707/yr. The primary cost driver is pharmacy. Also, the claimant is currently undergoing review for implantation of a SCS that appears will be approved. Subsequently the recommended medical reserve that would include SCS implantation and maintenance is $828,500.

The current medical reserve of $545,573 is too low.

| Topic: Medical | Title: HEMT-NCM-HEMT Tx Auth Decision P2 |
|---|---|
| Created By: MINTON,DONNA L | Modified By: MINTON,DONNA L |
| Created On: 02/23/2006 | Modified On: 02/23/2006 |
| Associated Document: N | |

Journal Entry:

If this is not the plan, the SCS would not be indicated as oral narcotic intake in this patient's care needs to be decreased either through oblation therapy or SCS. SI joint injections and trigger point injections should be given at a frequency of > 3-4 months.
In addition, psychological intervention is recommended.

A psychological evaluation was completed 2/14/06 by Dr J Scott Richards. He opined there were no contraindications for proceeding with a stimulator trial.
------------------------------------------------

Proposed Treatment, Duration and Setting:--NCM referring case back to RMD for final evaluation of SCC implantation request

Medical Records Choose ONE:  ====Yes, Intracorp Peer Review and Psychological Evaluation results
Y - FAX 603-334-0227  (no appt until received)
Y - In-person
N

| Topic: Medical | Title: HEMT-NCM-HEMT Tx Auth Decision P1 |
|---|---|
| Created By: MINTON,DONNA L | Modified By: MINTON,DONNA L |
| Created On: 02/23/2006 | Modified On: 02/23/2006 |
| Associated Document: N | |

Journal Entry:

*********All Fields Required*********

Requestor Name:==Donna Minton, RN, CCM, AIC

Requestor Phone #:==800-523-6906, ext 339

Due Date for Decision:==Monday 2/27/2006

Tx MD Name and Specialty:==Dr Efrim Moore, Anesthesiologist

Tx MD Phone #:==770-479-2322

Dx and General Overview of Case:==48 yr old Alabama female sustained a low back injury 2/2/93 while lifting bundles of pants.

Co-Morbid medical conditions include: Obesity(Claimant reports 2/14/06 she has lost 70 lbs), HTN, arthritis, tobacco abuse and mental health issues

Diagnosis==SI Joint Dysfunction, Arthritis; Failed Lumbar Back Syndrome; Bruising due to possible Depo Medrol Injections

Treatment:==S/P Lumbar fusion 10/21/1993; Medications including: Temazepam, Prozac, Oxycontin, Mobic, Hydrocodone and frequent steroid injections. Pending request as of 2/21/06 for implantation of a SCS

In Dec 2004 the request for implantation of a SCS was denied by RMD--Dr Sheehy. The attending adamently disagreed with the denial so the case was sent for an Intracorp Peer Review Jan 2005.

An Intracorp Peer Review dated Jan 2005 recommended before a SCS was implanted, claimant should be prescribed neuroleptics, & undergo nerve oblation treatment.  Intracorp opined there had also been overuse of injection therapy in to the SI joints on a monthly basis.
Intracorp further opined that if a neurolysis or ablation procedure should fail, a trial of a SCS would be appropriate. For permanent placement, the claimant should be weaned off all narcotics. Recommended treatment would include non-narcotic medications and a Lidoderm patch,

| Topic:  Medical | Title:  HEMT Medical Moore 2/2/06 |
|---|---|
| Created By:  BERRYHILL,VACOVA M. | Modified By: |
| Created On:  02/22/2006 | Modified On: |
| Associated Document:  N | |

Journal Entry:

Follows up for pain in her back and down both lower extremities. Pain continues to be severe in nature with numbness and weakness. She complains of continued difficulty with ambulation. She states that her WC carrier has referred her to a psychiatrist for anothre psychiatric eval prior to approving a SCS. Impression: Failed back syndrome. Lumbar radiculopathy. Plan Refill medications. Followup in 4 wks.

| Topic:  Medical | Title:  HEMT-NCM-Limited/Initial Assess P2 |
|---|---|
| Created By:  MINTON,DONNA L. | Modified By:  MINTON,DONNA L |
| Created On:  02/21/2006 | Modified On:  02/21/2006 |
| Associated Document:  N | |

Journal Entry:

Medical Cost Drivers (Plans to mitigate if needed)==Pharmacy

Case Strategy Discussed With:==Vacova Berryhill, TCS 2/21/06

Assessment (Effectiveness of medical tx plan, tx compliance, medical barriers, red flags, RTW Issues):==The claimant complains of low back pain that is relieved by her polypharmacy and bilateral lower extremity pain that is not.

In Dec 2004 the request for implantation of a SCS was denied by RMD--Dr Sheehy. The attending adamently disagreed with the denial so the case was sent for an Intracorp Peer Review Jan 2005.

An Intracorp Peer Review dated Jan 2005 recommended before a SCS was implanted, claimant should be prescribed neuroleptics, & undergo nerve oblation treatment.  Intracorp opined there had also been overuse of injection therapy in to the SI joints on a monthly basis.
Intracorp further opined that if a neurolysis or ablation procedure should fail, a trial of a SCS would be appropriate. For permanent placement, the claimant should be weaned off all narcotics. Recommended treatment would include non-narcotic medications and a Lidoderm patch,  If this is not the plan, the SCS would not be indicated as oral narcotic intake in this patient's care needs to be decreased either through oblation therapy or SCS. SI joint injections and trigger point injections should be given at a frequency of > 3-4 months.
In addition, psychological intervention is recommended.

A psychological evaluation was completed 2/14/06 by Dr J Scott Richards. He opined there were no contraindications for proceeding with a stimulator trial.

Medical LCE Appropriate:---IWE requested by NCM. Medial Reserves will be evaluated upon receipt.

Next Steps to Reach NCM Goal (Date Specific):==1) RMD referral 2/23/06;  2) 90 day assessment due 5/2

| Topic:  Medical | Title:   HEMT-NCM-Limited/Initial Assess P1 |
|---|---|
| Created By:   MINTON,DONNA L. | Modified By:   MINTON,DONNA L. |
| Created On:   02/21/2006 | Modified On:   02/21/2006 |
| Associated Document:   N | |

Journal Entry:

Information obtained:==48 yr old Alabama female sustained a low back injury 2/2/93 while lifting bundles of pants.

Co-Morbid medical conditions include: Obesity(Claimant reports 2/14/06 she has lost 70 lbs), HTN, arthritis, tobacco abuse and mental health issues

Diagnosis==SI Joint Dysfunction, Arthritis; Failed Lumbar Back Syndrome; Bruising due to possible Depo Medrol Injections

Treatment:==S/P Lumbar fusion 10/21/1993; Medications including: Temazepam, Prozac, Oxycontin, Mobic, Hydrocodone and frequent steroid injections. Pending request as of 2/21/06 for implantation of a SCS.

Last Office Visit:  ===N/A                              Next Office Visit:==N/A

NCM Goal:==RMD consultation regarding request for implantation of a SCS

Target RTW Modified Duty:==N/A
Target RTW Full Duty:===N/A

Key Accomplishments/Resources Utilized:==(Since Dec 2004)...1) RMD consultation 12/04 regarding request for SCS--Denied by RMD; NCM coordinated Intracorp peer review 1/19/2005  (Appeal) regarding SCS implantation denial by RMD;  2) NCM coordinated RMD consultation 2/21/06 for SCS request following psychological evaluation

PPO Status:==N/A

# EXHIBIT "2"





544-297967 (Ho)

Liberty Mutual Group

5301 Virginia Way
Suite 200
P. O. Box 300 (37024)
Brentwood, TN 37027
Telephone: ( 615) 373-9555
WATS 800-523-6906
Fax: (615) 371-9538 /8472

| **To:** | Jan Prince | **From:** | Bob Shouse |
| **Fax:** | 256-449-2174 | **Pages:** | 1 |
| **Phone:** | | **Date:** | May 16, 2001 |
| **Re:** | Belinda Gail Brown | **CC:** | |

☐ **Urgent**   x **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

● **Comments:**   Jan,

This will serve to confirm our conversation of earlier this morning. Dr. Stewart is no longer authorized to treat Ms. Brown for her worker's compensation injury. Dr. Efram Moore is now her authorized doctor per Dr. Stewart's referral of last April. If I may be of further assistance, please do not hesitate to call me.

Sincerely,


Bob Shouse II





# facsimile

# Transmittal

To:    Dr. Stewart
        Attn: Jan Prince

        fax: 256-449-2174

Re:    CLAIM NUMBER: 544-297967
        Belinda Brown

We have authorized Ms. Brown to be referred to Dr. Moore for pain management.

Sincerely,

*Stacy Seiber*

Stacy Seiber
Claims Case Manager

---

From the desk of Stacy Seiber
P.O. Box 300
Brentwood, TN. 37024
Tel:  615-373-9555, ext. 331
Fax 615-371-9538
     615-371-8472

# EXHIBIT "3"

Jun 20 02 09:48a     NGPC#          770 720 7895          p.1

# NGPC

PAIN MEDICINE SPECIALISTS          544032050923
IMPLEMENTING RECENT ADVANCES IN PAIN MEDICINE

Barry N. Straus, MD
Stephen J. Gould, MD
Ellen Moore, MD

Roswell          College Park
Canton           Decatur
Cartersville     Marietta
Cumming          LaGrange
Morehouse
770-476-2322   770-720-7895 (FAX)

June 17, 2002

Re: Belinda Brown's neurobehavioral status examination.

To Whom It May Concern:

Ms. Brown is a young lady with a history of lumbar disk disease with persistent moderate to severe pain in her lower back and lower extremities. She is being currently maintained on oral analgesics and undergoes SI joint injections. She has been extremely complaint with her medical regimen and because the pain exceeds the benefit she receives from the narcotics, she was thought to be a candidate for an intrathecal pump implantation which could provide her more relief than she is currently receiving with the moderate dose of oral analgesics. Therefore, she was referred to Robert J. Barth, PhD for a psychological evaluation for the intrathecal pump by her insurance company. The examination was performed February 21, 2002 and we only recently received a copy of it.

This evaluation is extremely unfair to Ms. Brown. First of all, it is performed by a psychologist. This examination should have been performed by a psychiatrist or if it was going to be done by a psychologist then someone who has a fellowship or training in pain management. It is obvious from this report by Robert Barth, PhD, that he has no understanding or no concern whatsoever for this patient's health and welfare.

First of all before performing his so called mental health and pain consultation, he did not feel the need to contact any of her previous physicians including myself to receive copies of medical records, list of medications, and to find out whether or not she had been compliant with her care. He mentions among many considerations that she met the guidelines mandating a strong suspicion of malingering. This is obviously someone who is seeing this patient for the first time and has no clue as to what pain management is all about or to the extent Ms. Brown's lumbar disk disease.

This lady has true disease and true pain which she tries to control with oral analgesics.

Jun 20 02 09:38a    NGPC#    770 720 7695    p.3

# NGPC

**PAIN MEDICINE SPECIALISTS**
IMPLEMENTING RECENT ADVANCES IN PAIN MEDICINE

Barry N. Straus, MD
Stephen J. Gould, MD
Efrim Moore, MD

| | |
|---|---|
| Roswell | College Park |
| Canton | Decatur |
| Cartersville | Marietta |
| Cumming | LaGrange |
| Morehouse | |
| 770-479-2322 | 770-720-7695 (FAX) |

Re: Belinda Brown's neurobehavioral status examination.
Page 2
June 17, 2002

Had Dr. Barth who is a PhD and not an M.D. attempted to follow any standards of care of medicine, he would have secured copies of her reports, records, and prescriptions prior to seeing her. It was obvious from his report that his decision was made up before he saw this patient which was to deny her any type of appropriate treatment. His report also mentioned that the pump as a proposed treatment plan should only be utilized as a last resort and that alternatives had not yet been exhausted. It is obvious from the fact that he did not obtain records that he did not realize what type of alternatives she has already been put through. This pump is currently being proposed as a last resort. Also, there are other guidelines that make patients candidates for pumps which he is obviously unaware of.

Additionally, he mentioned in his report that, "given the contraindications" for the proposed pump all involved parties would be well advised to amend their proposal. He mentions no contraindications for the pump and is making blanket statements for whatever reason.

It is very wise to have patients who are being referred or considered for intrathecal pumps to undergo a psychological evaluation but it is fair to the patient to have this evaluation performed by an appropriately trained physician.

I think the way this report was conducted is not only disrespectful to this patient and the medical community but it also borderlines on malpractice.
Robert Barth, PhD, mentions no specific criteria for why he felt she was not a candidate for an intrathecal pump but only to make blanket statements that she was "malingering."

This report was discussed with Ms. Brown in the office on June 13, 2002, and she was advised to do with this information what she felt necessary.

Sincerely,

Efrim C. Moore, M.D.
ECM/ja

# EXHIBIT "4"

| Topic: QCM | Title: HEMT-Subsequent |
|---|---|
| Created By: WRIGHT, TIMOTHY L. | Modified By: |
| Created On: 04/29/2004 | Modified On: |
| Associated Document: N | |

Journal Entry:

Have all significant litigation, medical and disability issues been identified? Ind benefits capped. Meds open for lumbar condition resulting in 2 prior surgeries. Issue raised regarding pain pump. Claimant continues to treat conservatively. Currently, RX and Md visits are the primary cost drivers. AL jurisdiction assigned risk account. Claimant diagnosed with cushings syndrome and osteopenia. MD suggest cushings is related due to the multiple rx injections. TCS continuing to explore the causation issue. PDC in place. FI assignment completed. MDM current. RX being dispensed through network vendor.

Have all potential sources of internal and external assistance been explored? NO. If further discussion regarding morphine pump, need to discuss with CCMU.

Are appropriate resources being utilized? Yes.

If the case is a candidate for indemnity and/or medical settlement, has it been accurately evaluated with a plan in place to reach a timely resolution? Yes. No evaluation has been conducted to date. Note to TCS to reconsider case for settlement.

Are the Indemnity, Medical and Expense reserves adequate? Medical LCE is in line with the exposure.

Are there any recommendations or changes to the action plan that would be beneficial in managing this file to achieve the best possible outcome? Treatment alternative to morphine pump has been identified. If further discussions occur regarding pain pump, let's discuss with CCMU. Proceed with file work up for potential settlement of future meds. Follow-up for MDCM in-person assessment.

| Topic: Action Plan | Title: HEMT 60 Day Action Plan |
|---|---|
| Created By: BERRYHILL, VACOVA M. | Modified By: |
| Created On: 04/27/2004 | Modified On: |
| Associated Document: N | |

Journal Entry:

This is a 1993 Al medical only case. Clt picked up bundle of pant injuring lower back. Clt had a lumbar fusion in 10/93. Pain rt hip, leg and lower back has continued.

Clt is treating with Dr Moore. At one point Dr Moore wanted to do a pain pump. We had 2 psych evaluation done. One psych (Barth) stated clt not a pain pump candidate since there was other treatment Dr Moore could do first. Then a 2nd opinion by another psych (Summers) was completed and she made recommendation of other treatment that Dr Moore should try prior to pump. Dr Moore HAS NOT tried any of these receommendations. Clt was sent to Dr Watts due to excess bruising. Dr Watts dxed Cushing Snydrome which could be related to the many injections. Dr Moore HAS NOT made any additional request for a pain pump.

At this time we have NOT and will NOT authorize any pump. Dr needs to try other treatment first.

Continue to manage medical for any c/r issues that may arise
Ran IWE
Post IWE
Price case and discuss with atty.

| Topic: Medical | Title: HEMT Medical Moore-4/1/04 |
|---|---|
| Created By: BERRYHILL, VACOVA M. | Modified By: |
| Created On: 04/16/2004 | Modified On: |
| Associated Document: N | |

# NGPC

2*97967 H 331E*

**PAIN MEDICINE SPECIALISTS**
IMPLEMENTING RECENT ADVANCES IN PAIN MEDICINE

Barry N. Straus, MD, JD
Stephen J. Gould, MD
Efrim Moore, MD
M. R. Mani, MD

5*4 40 3 1 5 4 0 4 0 9

| Roswell | College Park |
|---------|--------------|
| Canton | Decatur |
| Cartersville | Marietta |
| Cumming | LaGrange |
| Atlanta Medical | |

770-479-2322   770-720-7695 (FAX)

Brown, Belinda
05/22/03

Patient is followed up for pain in her back and down both lower extremities. She states that the mood swings are better controlled with the Paxil CR. There is also continued bruising on both upper extremities. Patient denies any side effects from the medications, and receives great relief from the SI injections.

**PHYSICAL EXAMINATION:** Alert and oriented x 3. Affect is normal. She is tender to palpation over the lumbar paraspinal muscle area and over the right sacroiliac joint. There are also some ecchymotic areas noted over both forearms.

**IMPRESSION:**
1. SI joint dysfunction.
2. Failed back syndrome.

**PLAN:**
1. Right SI joint injection.
2. Refill medications, OxyContin 40 mg p.o. t.i.d. x 90, Lorcet 10 mg p.o. q.i.d. p.r.n. breakthrough pain x 120, Restoril 30 mg p.o. q.h.s. x 30, Paxil CR 12.5 mg p.o. q.d. x 30, refill x 1, and Mobic 15 mg p.o. q.d. x 30, refill x 3.
3. We will also make a referral to Dr. Watts in Stockbridge who happens to be an endocrinologist. She should see him to determine whether or not the bruising is coming from the Depo-Medrol. If it is, we would need to decrease the frequency of the injections, however she will experience much increased pain. She receives good relief with the injections, however we would not want to continue if this is the source of her bruising. If this is the case, however, we would have to consider other means of treating her pain.
4. She will follow up in five weeks, and hopefully will have seen Dr. Watts by that time.

Efrim C. Moore, M.D.

ECM/wcw

# EXHIBIT "5"

**R. RE͞— HA͞— ͞IS, M.D.**

ORTHOPEDIC SURGERY

ST. VINCENT'S HOSPITAL - PROFESSIONAL BUILDING #1
2660 10TH AVENUE SOUTH, SUITE 640
BIRMINGHAM, ALABAMA 35205
PHONE (205) 933-5960 • FAX (205) 933-2234

August 14, 2003

Liberty Mutual-Brentwood
5301 Virginia Way
Suite #200
Brentwood, TN 37027
ATTN: Michael Coonce

Re:          **Belinda G. Brown**
Workers Comp: 544-297967035739469-01
Date of Injury: 2/2/93

Dear Ms. Coonce:

This letter is in reply to your request for the report of a IME on Belinda G. Brown.

I saw this patient in the office on 8/14/2003. I have reviewed the records which were sent prior to this patient's visit.

Her diagnosis is failed back surgery and SI joint arthropathy.

Her prognosis is fair to poor.

The history of her injury is that she injured her back moving clothing articles out of her way. She felt something pull in her back. This occurred in 1993. She subsequently has seen multiple physicians. She has had multiple tests. She has had multiple treatments. She has had a spinal fusion. She has had removal of the spinal hardware. At the present time she is followed by a chronic pain specialist and takes monthly injections in her back. She is also on Lorcet 10 mg and Oxycontin.

There is no history of prior injuries or pre-existing conditions.

544032380113

Page Two
Liberty Mutual-Brentwood
Re:    Belinda G. Brown
August 14, 2003


I can relate her current condition causally to her injury of 1993.

Her present medical status is that she is in chronic pain.

Further treatment is needed in the form of her continued visits with her current treating physician. She sees him monthly. I agree with that.

Further treatment will be reasonable and if necessary treatment has not been excessive.

The patient is at present totally disabled and is disabled functionally.

There are well-healed midline scars in the back.

The patient is permanently and totally disabled.

End result has been achieved.   Maximum medical improvement has been achieved.

The patient cannot work at this time.

Her physical capacities are that she can walk, sit or stand for limited periods of time. She cannot lift more than 5-10 lb.

As far as her periods of total and partial disability, I would assume that they have been since the accident. I have nothing further to relate it to.

It is my opinion that all of these current conditions are related to the 1993 injury. A report has indicated that x-rays in the year 2000 indicated spondylolisthesis which was not evident on the films taken in 1997. From Dr. Michael's notes of 3/31/93, there is evidence made of spondylolysis. There is no level mentioned but a scan was being done to ascertain whether or not there was activity around this area of spondylolysis. The reports which you sent to me do not give the report on the bone scan which was done after 3/31/93.

It is my medical opinion that her current symptoms are related to the original injury and that her current treatment is appropriate.

544032380112

**Page Three**
**Liberty Mutual-Brentwood**
**Re:     Belinda G. Brown**
**August 14, 2003**

I would like ascertained where the bone scan which was ordered by Dr. Michael on 3/31/93 is because it is not in the records which you sent to me.

If you desire further information, please do not hesitate to contact me.

Sincerely,

R. Rex Harris, M.D.

RRH/ts

# EXHIBIT "6"

Jun 27 03 10:38a        NGPC#                    770 720 7695              p.2

# NGPC

PAIN MEDICINE SPECIALISTS
IMPLEMENTING RECENT ADVANCES IN PAIN MEDICINE

Barry N. Straus, MD, JD
Stephen J. Gould, MD
Efrim Moore, MD
M. R. Mani, MD

Roswell         College Park
Canton          Decatur
Cartersville    Marietta
Cumming         LaGrange
Atlanta Medical
770-479-2322   770-720-7695 (FAX)

June 26, 2003

Shea Chappell, RN, CCM
**FAX: 615-371-9538**

RE:   Belinda Brown

Dear Ms. Chappell:

Once again I am sending a letter explaining why the SI joint arthropathy that Ms. Brown is experiencing is due to her work-related injury. This was addressed to you in a letter once before in November 2001. I am unclear as to why you are giving this patient such a difficult time and trying to practice medicine instead of trying to help this patient.

She received a work-related injury. She has failed back syndrome. People who have disk injuries will commonly develop dysfunction of the SI joints due to spine problems which are all related to her accident. She has been treated over the past several years with steroid injections which provide her some temporary relief of her pain in between appointments, however she has lately developed bruising which is probably due to the Depo-Medrol treatment of her work-related injuries. This needs to be confirmed by Dr. Watts, an endocrinologist, and if so, we can discontinue this line of treatment and proceed along another avenue.

Again, I am unclear as to why you appear to be giving this patient such a difficult time who has been compliant with each and every request made of her. This problem needs to be rectified and done so quickly. If you have any further questions, please feel free to contact me at the North Georgia Pain Clinic.

Sincerely,

Efrim C. Moore, M.D.

ECM/wcw
cc:   Oliver Kitchens, Attorney

# NGPC

PAIN MEDICINE SPECIALISTS
IMPLEMENTING RECENT ADVANCES IN PAIN MEDICINE    5 2 0 5 0 9 2 1

Barry N. Straus, MD, JD
Stephen J. Gould, MD
Efrim Moore, MD
M. R. Mani, MD

| Roswell | College Park |
| Canton | Decatur |
| Cartersville | Marietta |
| Cumming | LaGrange |
| Atlanta Medical | |

**770-479-2322   770-720-7695 (FAX)**

Belinda Brown
June 26, 2003

Patient follows up for pain in her back and down both lower extremities. The pain has been increased over the past couple of weeks. Also, she has noticed increased bruising on her left arm for the past 1 to 1½ weeks.

**PHYSICAL EXAM:** Alert and oriented x 3. Affect is normal. Tender to palpation of the lumbar paraspinal muscles. Tender over bilateral SI joints. Also, there is ecchymotic areas noted over the dorsum of the left forearm.

**IMPRESSION:**
1.    Failed back syndrome.
2.    SI joint dysfunction.

**PLAN:**
1.    Refill medications.
2.    We are continuing to seek approval for her to see Dr. Watts, the endocrinologist, at Stilesbridge regarding the bruising. However, we are meeting resistance from the <u>nurse</u> case manager of her Workman's Compensation carrier. We will continue to seek approval and this may be something that she needs to have her attorney to direct additional attention to.

Efrim C. Moore, M.D.

ECM/kew

# EXHIBIT "7"

# NGPC

PAIN MEDICINE SPECIALISTS
IMPLEMENTING RECENT ADVANCES IN PAIN MEDICINE

Barry N. Straus, MD, JD
Stephen J. Gould, MD
Efrim C. Moore, MD
M. R. Mani, MD

College Park    Atl.Medical
Canton          Decatur
Cartersville    Marietta
Cumming         Roswell
LaGrange

770-479-2322   770-720-7695 (FAX)

December 17, 2004

Liberty Mutual
Attn: Vacova Berryhill
Fax No.: 603-334-0262

Re:     Belinda G. Brown
        Date of Injury: 02/1999

Dear Ms. Berryhill:

This letter is in regard to a request for treatment for Ms. Brown.  I understand
that you gave a verbal denial to our office regarding spinal cord stimulator trial for
Ms. Brown.  Your reasons sited were patient has not been tried on any
neuroleptic medications and that she "failed" a pump trial in the past and was not
a candidate. We were completely shocked at the refusal to allow this patient to
undergo appropriate treatment.

With regard to your comments, Ms. Brown has been on Neurontin on at least two
different occasions, most recently, October of 2004.  She was unable to tolerate
the Neurontin, even the bedtime dosage, because it caused her to be drowsy the
following day and "out of it."  Therefore, because of her safety, this medicine was
discontinued.  With respect to her not being a candidate for a spinal cord
stimulator trial, I am not sure whether or not you have reviewed her records or
not, but on August 27, 2004, patient underwent EMG and nerve conduction
studies which revealed left lumbosacral radiculopathy active at L5, chronic at L5,
and also active at S1 and L4.  Secondly, it revealed a right lower lumbosacral
radiculopathy active at L5-S1 and chronic at L5 and thirdly, it revealed evidence
of a dying-back neuropathic effect upon the posterior tibial nerves bilaterally,
right greater than left, but significant bilaterally due to ongoing and prior proximal
nerve root compromise at the L5 and S1 levels.  One of the main indications for
spinal cord stimulation is radiculopathy.  Patients with leg pain worse than back
pain are excellent candidates for spinal cord stimulation trial, which is the
situation in Ms. Brown's case.  She had been controlled with injections of
steroids in the past, however, because of endocrine problems and bruising, this
had to be discontinued.  She is already on a high dose of pain medication and
your recommendation of increasing her narcotics is not a viable option.
Narcotics will only give so much relief when nerve-related pain is involved such

# NGPC

**PAIN MEDICINE SPECIALISTS**
IMPLEMENTING RECENT ADVANCES IN PAIN MEDICINE

Barry N. Straus, MD, JD
Stephen J. Gould, MD
Efrim C. Moore, MD
M. R. Mani, MD

College Park    Atl.Medical
Canton          Decatur
Cartersville    Marietta
Cumming         Roswell
LaGrange

770-479-2322    770-720-7695 (FAX)

Re:    Belinda G. Brown
December 17, 2004
Page 2

as with radiculopathy.  The patient is unable to have any reduction irritation of the nerve's body by a steroidal-type mechanism.  Spinal cord stimulator is the next option.  With regard to her failing her trial, this patient has never had a spinal cord stimulator trial.  She has had an intrathecal pump trial in the past, which was greater than 1½ years ago.  She passed her trial, however, the psychologist that you had examine Ms. Brown was Dr. Robert Barth in February 2002.  This psychologist made suggestions regarding the patient not being a candidate for intrathecal pump without obviously either not having the records or without taking the time to review the records.  A case of this difficulty should at least be referred to a reputable psychologist with specialization in the pain field.

In summary, Ms. Brown is a candidate for spinal cord stimulator trial.  A trial is a week to two week test to see if the stimulation helps.  She may undergo the trial and decide that she does not want to have it done.  She should at least have that opportunity to see if this would help her pain.  For the reasons stated above, she is an excellent candidate.  If needed, please feel free to have a second, appropriately-trained, pain management physician to see her and advise you as to whether or not a spinal cord stimulator trial is warranted.  I think a nurse cannot make this medical decision and a psychologist cannot make this medical decision regarding the patient.  If there are any further questions, please feel free to contact me at North Georgia Pain Clinic.

Efrim C. Moore, M.D.

ECM/kew
cc:    Belinda Brown
       P.O. Box 907
       Wedowee, AL 36278

       Jeff Stewart, M.D.
       Woodland Clinic
       75 County Road, No. 64, Suite 3
       P.O. Box 86
       Woodland, AL 36280

# NGPC

544043360029

PAIN MEDICINE SPECIALISTS
IMPLEMENTING RECENT ADVANCES IN PAIN MEDICINE

Barry N. Straus, MD, JD
Stephen J. Gould, MD
Efrim C. Moore, MD
M. R. Mani, MD

| College Park | Atl.Medical |
|---|---|
| Canton | Decatur |
| Cartersville | Marietta |
| Cumming | Roswell |
| LaGrange | |

770-479-2322   770-720-7695 (FAX)

Brown, Belinda
11/11/2004

Patient follows up for pain in her back and down both lower extremities. She states that the pain has been severe and worse since her visit last month. She states that she could not tolerate the Neurontin. She took it once at bedtime for four days but it caused her to be drowsy and "out of it" the following day. Patient fell approximately two days ago. She states that her legs "gave way."

**PHYSICAL EXAM:** Unchanged from her visit last month.

**IMPRESSION:**
1. Failed back syndrome.
2. Lumbar radiculopathy.

**PLAN:**
1. Refill oral medications.
2. Discontinue Neurontin.
3. We will seek approval for a spinal cord stimulator trial. This is her best option for any type of relief regarding her pain and numbness down both legs. Her leg symptoms are worse than her back which would make her an excellent candidate for the spinal cord stimulator. We are seeking to do a trial to ensure that she does receive the appropriate amount of benefit. We will also send her a copy of the spinal cord stimulator tape so that she can formulate any questions to ask at her next visit.
4. Followup in four weeks.

Efrim C. Moore, M.D.

ECM/kew/wcw

# NGPC

PAIN MEDICINE SPECIALISTS
IMPLEMENTING RECENT ADVANCES IN PAIN MEDICINE

Barry N. Straus, MD, JD
Stephen J. Gould, MD
Efrim C. Moore, MD
M. R. Mani, MD

5 4 4 0 4 3 0 2 0 0 7 5

College Park    Atl.Medical
Canton          Decatur
Cartersville    Marietta
Cumming         Roswell
LaGrange

770-479-2322    770-720-7695 (FAX)

Brown, Belinda
10/14/2004
Page 1 of 2

Patient follows up for pain in her back. She was not seen last month because her medications were written by her primary care physician. She complains of progressive numbness down both lower extremities, left greater than right. She also complains of return of the bruising to both forearm areas. She underwent EMG nerve conduction studies on August 27, 2004. Report reads: 1.) Left lumbosacral radiculopathy which is quite active at L5 and also chronic to a significant degree at L5. Also active at S1 more so than L4 and chronic to a mild degree at L4 and S1. 2.) Right lower lumbosacral radiculopathy which is mildly active at L5 and S1 and chronic to a mild degree at L5. 3.) Evidence of dying-back neuropathic effect upon the posterior tibial nerves bilaterally, more so on the right than the left, but significantly so bilaterally and presumably in context of ongoing and prior proximal nerve root compromise at L5-S1 levels.

**PHYSICAL EXAM:** Alert and oriented x three. Affect is normal. She has an antalgic gait. She has decreased range of motion of her lumbar spine. She has marked tenderness over lumbar paraspinal muscle area and bilateral sciatic notch areas. Motor is 4/5 over both lower extremities. Sensory is decreased on the lateral aspect of both legs and the dorsum of her left foot. She also has ecchymotic bruising areas on both forearm areas.

**IMPRESSION:**
1.    Failed back syndrome.
2.    Lumbar radiculopathy.

**PLAN:**
1.    Refill medications. Add Neurontin 600 mg p.o. q.h.s. x five days and then increase to one p.o. b.i.d. x five days and then one p.o. t.i.d., dispense #90 tablets.
2.    She is advised that if this does not help with the active denervation of the nerve root, she may benefit from a spinal cord stimulator trial. She could benefit from epidural steroid injections or nerve root injections, however, because of the bruising, we will hold off any steroid usage at this time.

# NGPC

**PAIN MEDICINE SPECIALISTS**
IMPLEMENTING RECENT ADVANCES IN PAIN MEDICINE

544043020076

Barry N. Straus, MD, JD
Stephen J. Gould, MD
Efrim C. Moore, MD
M. R. Mani, MD

College Park      Atl.Medical
Canton            Decatur
Cartersville      Marietta
Cumming           Roswell
LaGrange

**770-479-2322    770-720-7695 (FAX)**

Brown, Belinda
10/14/2004
Page 2 of 2

3.     Followup in four weeks.

Efrim C. Moore, M.D.

ECM/kew/wcw
cc:      Jeff Stewart, M.D.
          Woodland Clinic
          76 County Road, No. 64, Suite 3
          P.O. Box 86
          Woodland, AL 36280

# EXHIBIT "8"

# NGPC

PAIN MEDICINE SPECIALISTS
IMPLEMENTING RECENT ADVANCES IN PAIN MEDICINE

Barry N. Straus, MD, JD
Stephen J. Gould, MD
Efrim C. Moore, MD
M. R. Mani, MD

College Park      Atl.Medical
Canton            Decatur
Cartersville      Marietta
Cumming           Roswell
LaGrange

770-479-2322    770-720-7695 (FAX)

March 15, 2005


Ms. Vacova M. Berryhill
Liberty Mutual Insurance Company
Fax No.: 603-334-0262

Re:    Belinda G. Brown
       DOI: February 1999

Dear Ms. Berryhill:

This letter is in response to your denial of Ms. Brown's spinal cord stimulator trial. I have reviewed the comments made by your reviewing "physician" Dr. David W. Johnson.

First of all, this appears to be a person reviewing the records without seeing the patient and also a physician who is not trained in pain management, does not practice pain management and is not Board certified by the American Board of Anesthesiology Board of Pain Management. The recommendations were ridiculous. Ms. Brown has injury of several nerve roots and performing a neurolysis or nerve oblation would not be feasible. I am not quite sure as to what type of neurolysis your physician was referring to. This procedure is rarely done when there are several nerve roots involved of both lower extremities and what you may not be aware of is that if I perform this procedure with a radiofrequency probe, which is the only way to safely do it, one would have to do the procedure on one leg at a time. The neurolysis with radiofrequency probe lasts anywhere from 6 to 12 months. It would have to be repeated once or twice per year in a surgeon's center and the cost, even the first two to three years would greatly exceed the cost of a spinal cord stimulator. This is the first problem with the recommendation. The second is I would like to see the literature from your physician which shows that SI joint injections are supposed to last from two to three months. Again, this is a ridiculous statement in that chronic pain patient's relief from various procedures are all going to vary. There is no textbook time line during which someone should receive benefit from any procedure. Again, it is not usual and customary to perform these blocks every

# NGPC

PAIN MEDICINE SPECIALISTS
IMPLEMENTING RECENT ADVANCES IN PAIN MEDICINE

Barry N. Straus, MD, JD
Stephen J. Gould, MD
Efrim C. Moore, MD
M. R. Mani, MD

College Park     Atl.Medical
Canton           Decatur
Cartersville     Marietta
Cumming          Roswell
LaGrange

770-479-2322   770-720-7695 (FAX)

Re:    Belinda G. Brown
March 15, 2005
Page 2

three to four months. The are obviously statements made by a physician who obviously is not practicing medicine full time. Additionally, he mentions that neurolysis of the nerve roots is a noninvasive treatment. This is a very invasive treatment. It is not surgical, however, it involves heating the sheath of the nerve root and there are a great deal of complications that can occur from this from neuritis, inflamation of the nerve, to reflex sympathetic dystrophy. Risks that greatly out way the risks from the spinal cord stimulator.

I was hoping that sending the letter to you dated December 17, 2004 with an article on spinal cord stimulator from a reparable physician would help make this decision process easy but this does not appear to be the case. I have advised the patient just to discuss these recommendations with her attorney and see what happens. This could definitely fall under the category of malpractice by Dr. Johnson in that he is rendering inappropriate treatment on a patient that he has never seen or examined.

Sincerely,

Efrim C. Moore, M.D.

ECM/kew
cc:    Jeff Stewart, M.D.
       Woodland Clinic
       75 County Road, No. 64, Suite 3
       P.O. Box 86
       Woodland, AL 36280

       Belinda Brown

# EXHIBIT "9"

# NGPC

PAIN MEDICINE SPECIALISTS
IMPLEMENTING RECENT ADVANCES IN PAIN MEDICINE

Barry N. Straus, MD, JD
Stephen J. Gould, MD
Efrim C. Moore, MD
M. R. Mani, MD

College Park     Atl.Medical
Canton          Decatur
Cartersville    Marietta
Cumming         Roswell
LaGrange

**770-479-2322   770-720-7695 (FAX)**

Brown, Belinda
06/23/2005

Patient follows up for pain in her back and down both lower extremities.  Pain continues to be severe in nature.  She has difficulty with sleep due to pain in her legs and complains of continued numbness and weakness down both lower extremities.  Her lower extremity symptoms are much worse than her back pain.  She still has not been authorized to undergo spinal cord stimulator trial by her Workman's Compensation carrier although she is an ideal candidate.

**PHYSICAL EXAM:** Alert and oriented x three.  Affect is normal.  She has an antalgic gait.   Decreased range of motion of her lumbar spine.  She is tender to palpation over the lumbar paraspinal muscle area.  She is tender over bilateral sacroiliac joints.  Seated straight leg raise continues to be positive bilaterally.  Motor is 4/5 over both lower extremities.   Sensory is decreased down the lateral aspect of both legs and dorsum of both feet.

**IMPRESSION:**
1.     Failed back syndrome.
2.     Lumbar radiculopathy.

**PLAN:**
1.     Refill medications.
2.     Followup in four weeks.
3.     She is continuing to seek approval for the spinal cord stimulator trial.  In the process, she is becoming progressively worse symptom-wise.


Efrim C. Moore, M.D.

ECM/kew/wcw

# EXHIBIT "10"

COLUMBUS PAIN CENTER, P.C.
Daniel H. Serrato, M.D.
5 4 4 0 5 3 4 9 0 2 4 3

INITIAL EVALUATION

COPY

PATIENT:  Belinda Brown
    SSN:  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
   DATE:  11/28/05
CHART #:  008028-1

CHIEF COMPLAINT:  Low back pain, bilateral leg pain.

HISTORY OF PRESENT ILLNESS:  This 49-year-old, White female
in 1993 was lifting at work when she felt a sudden pain in
her back.  She sat down for a while and rested but the pain
got fairly severe.  Her employer sent her to an M.D. where
she was evaluated and given analgesics.  She was put in
programs of physical therapy.  She received epidurals.
Finally some studies were done.  She had a blown-out disc.
She was taken to surgery where she was immediately treated
with hardware.  This did not help at all.  As a matter of
fact things seemed to be a little bit worse.  About six
months later they removed the hardware.  She continued to go
through physical therapy and taking medications.  This was
done in Birmingham.  Finally she found Dr. Efrim Moore who
was closer to her hometown.  He has been treating her
medically.  He tried some epidurals that haven't changed
things.  Her meds control her back pain but she has
continuous leg pain and he has considered a dorsal column
stim and sent her here for a second opinion.  Her low back
pain is all the time.  It wax and wanes in severity.  She
feels like she has a knife stuck in it.  It goes bilaterally
down into the legs as far as the feet, actually it may be
even worse there.  Any kind of activity tends to exacerbate
it.  She says rest will help some.  Her foot pain she feels
like is a stabbing type pain between the toes and epidurals
never helped this in any shape, form or fashion, nor have
any of the medications.  There was a question of a pump
being used in the past but because of her predominant leg
pain they felt like a stimulator would be better.  There is
some question of workman's comp not feeling like she has not
been tried on a medical regimen long enough.

PAST SURGICAL HISTORY:  Tonsillectomy, hysterectomy, left
elbow surgery, exploratory lap, c-sections, cholecystectomy,
kidney stones, and of course her two lumbar spine surgeries.

PAST MEDICAL HISTORY:  Positive for hypertension and thyroid
changes.  Negative for diabetes, seizures, asthma, peptic
ulcer disease, MI, or CVA.

CURRENT MEDICATIONS:  She is on Lidoderm, Oxycontin, Lorcet,
Normadyne, Cymbalta, Laxis, Synthroid, Mobic and Ibupurinol.

RE:  Belinda Brown          544053490244
     11/28/05

ALLERGIES:  Negative for food or shellfish allergies.  She says she is allergic to aspirin.

FAMILY HISTORY: Congenital - negative.  Hereditary - hypertension.  Premature family deaths - none.

SOCIAL HISTORY:  Patient is married.  Ex-smoker for four years although she had a twenty year history of smoking.  No alcohol or illicit drug use.  Work - housewife.  School - she completed the twelfth grade.  Military - none.  Children - three.

STRESSORS:  Legal - none.  Home - none.  Family - none. Work - none.

REVIEW OF SYSTEMS: General - Negative for fever or weight loss.  Some sleep problems secondary to pain.

EYES:  Negative for visual changes, diplopia, scotoma or night blindness.

EARS, NOSE AND THROAT:  She has some left ear hearing loss. Negative for tinnitus, change in taste or smell, dental or TMJ problems.

CARDIOVASCULAR:  Negative for shortness of breath, PND, orthopnea, dyspnea on exertion, angina or edema.

RESPIRATORY:  Negative for cough, wheezing or cyanosis.

MUSCULOSKELETAL:  See HPI.

SKIN:  Negative for rash, hives or pruritis.

NEUROLOGICAL:  No change in level of consciousness, syncopy, bowel or bladder problems.

PSYCHIATRIC:  Negative for mood changes, crying or anger.

ENDOCRINOLOGY:  Negative for polydipsia, polyuria, sweating, flushing, tremors or heat intolerance.

GI:  Negative for nausea, vomiting, diarrhea or melena.

HEMATOLOGY:  Negative for bruising, epistaxis or bleeding.

GU:  Negative for frequency or urgency.

RE:  Belinda Brown                      5440534990245
11/28/05

PHYSICAL EXAM:  This is a well developed, well nourished, White female with a weight of 216 pounds at 5'7'' tall. Blood pressure today is 128/60 with a pulse of 61 and respiration 20. Patient is afebrile.  Head is normocephalic.

CHEST:  Lungs are clear to auscultation bilaterally.

HEART:  Regular rate and rhythm, SI-SII, no murmurs, thrills or rubs.

ABDOMEN:  Soft and non-tender.

ARMS:  Motor strength is 5/5 bilaterally with good range of motion.   Sensory  and  reflexes  are  present  and  equal bilaterally.

SPINE:
        Cervical - free of any tenderness or deformity.
        Thoracic - free of any tenderness or deformity.
        Lumbar - there is some mild bilateral tenderness.
        No spasm or deformity noted.

LEGS:  Motor strength is 5/5 bilaterally with good range of motion.  Very mild sensory changes bilaterally in the feet to gross exam.  Reflexes are intact.

NEURO:  Essentially normal except as described above.   The sitting straight leg test is negative bilaterally.

REVIEW OF STUDIES:  No x-ray reports present at this time. I have studies from her EMG and nerve conduction studies that show changes in the L5-S1 area of her spine.

ASSESSMENT:    Patient  with  chronic  lumbar  spine  pain, perineural fibrosis, degenerative disc disease.   She has residual neuritis bilaterally that goes out as far as the feet.

OPINION:  I feel that this patient is an excellent candidate for a dorsal column stimulator.  She will probably need the two leads in the back to cover both legs well.  She can even possibly get some lumbar benefits from this but certainly wit her predominant leg pain bilaterally to the feet.  The dorsal column stimulator would be the most effective treat- ment for this lady at this time and would not require any escalation of narcotic usage.  I think she is an excellent candidate for this and agree with Dr. Efrim Moore that she

RE:   Belinda Brown                        5440503490246
        11/28/05

go on and at least trial this to see what sort of effect it
has for her.   I am going to generate a letter to Dr. Efrim
Moore confirming this.   She will be given a prn follow-up.


_____

Daniel H. Serrato, M.D./dab/11/28/05

cc:   Dr. Efrim Moore
        North Georgia Pain Clinic
        1320 Oakside Dr., Suite 203
        Canton, GA   30114

# EXHIBIT "11"

# Pamela E. Parker, MD
201 Corporate Center
2700 Rogers Drive
Birmingham, Al 35209
Phone 205-414-6097          Fax 205-414-6098

## BROWN, BELINDA

The patient is a 46-year-old white female who presents for evaluation as a candidate for a morphine pump. She was aware that the purpose of this evaluation was for insurance/reimbursement purposes and that the report would be submitted to the insurance company. The following history was obtained from the patient without influence from accompanying records or relatives. My impressions and suggestions are written with attention to all submitted records regarding the patient.

HPI: The patient says her pain difficulty began in 1993 with an injury at work. She subsequently had back surgery twice; neither was helpful. She has also had a number of procedures, including epidurals, nerve blocks and TENS, which have not contributed any major pain relief. She has received numerous combinations of analgesics, benzodiazepines, and narcotics, but with unrelenting pain. Although a specialist in pain has treated her, she has *not* been given a trial of any tricyclics, anticonvulsants, neuroleptics, or SSRI's other than Prozac. While she has been on Prozac for almost ten years, an increase in dosage has never been attempted.

PMH: In general, the patient thinks of herself as having been in good health prior to her injury. Her first child was delivered by Caesarean section due to breech presentation. The second child was also delivered by C-section in keeping with medical standards of the time. She was diagnosed with endometriosis and subsequently had a hysterectomy and unilateral oophorectomy. Her second ovary was removed in a later procedure. She is taking replacement hormones and is allergic to aspirin. She stopped smoking six months ago and is using Nicorette gum.

In 1993, the patient's work injury occurred when she lifted a bundle of sewing materials and "something popped in my back; my legs went numb." She was treated by a general physician, x-rayed and sent to a "back specialist" at HealthSouth who found a "torn disc" and recommended fusion surgery. Epidurals attempted before surgery were not helpful.

Because the fusion did not relieve her pain, she found herself depressed, feeling as if her life were "totally incapacitated". Her family doctor subsequently prescribed Prozac 20mg/day. She found this medication to be extremely helpful, and commented several times that she would not want to stop Prozac ever. On a number of occasions, she was given "nerve pills" such as Valium, Flexeril and Zanax, but "took myself off because they made me too doped up."

**SH:** The patient grew up in Evergreen, Alabama, where her father was a State Trooper. She "loved school," which she attended in the public sector. When she reached eighth grade, her family moved to Geneva, where she was active in band, played saxophone, and was identified as "the most friendly" in her class. Upon completing eleventh grade, her parents divorced, and she subsequently decided to get married. This marriage was troubled by her husband's abusive nature and her attempt to return to high school while pregnant. Ultimately, she followed her mother to the Florida panhandle area, divorced, and married her second husband when her son was four years old. They lived in Panama City for eight years, and she had a daughter.

At the influence of her grandparents, the patient and her husband moved back to Wedowee and took jobs in the sewing plant. They were both happy there. When a new company opened, the patient changed positions. She had been with the new company three years when she was injured and discontinued working. Since her disability, the patient and her husband have taken on the rearing of her young niece, the daughter of her husband's brother. While we did not have time to discuss this decision in detail, the patient indicated that the child was in need of a family, and they were quite willing to take the responsibility.

**FH:** Negative for substance abuse, sociopathy. See below.



**MSE:** pleasant white female, who had clearly given attention to her appearance and dress, was wearing make-up appropriately. She was somewhat overweight. She was able to give a concise history in logical sequence. There was no evidence of histrionic tendencies. Affect was appropriately modulated, in response to an appropriately broad

range of emotions. Cognition was intact. As the interview progressed, she became increasingly uncomfortable in the sitting position, and she reluctantly acknowledged that her pain became more prominent when in the same position for long periods of time.

Impressions:

1. Chronic pain secondary to injury. The incredibly surprising aspect of this patient's history and medical record is that many possibilities for the management of pain seem to have been completely overlooked in her care.

2. Personality structure includes features of persistence, endurance and attention to detail. In this structure, there is often a slight tendency toward obsessiveness, which can be of great assistance in the workplace, as it takes on a perfectionistic approach to work.

3. Dysthymic disorder—this disorder, which lies in the spectrum of depressive disorders, can sometimes be overlooked as a source of both discomfort to the patient and a confounding factor to the treatment of pain. It sometimes results from the long-standing exposure to pain. It is also a diagnosis used when the patient's emotional state is in the spectrum of depression, and some symptoms, such as irritability, may be considered depressive "equivalents".

   It has long been recognized by psychiatrists that there are many sub-types of depression. These subtypes have been largely unaddressed in the DSM IV due to the lack of agreement between psychiatrists writing the document. There is, nonetheless, a very real discomfort, described by various patients in different ways, which is highly responsive to medications in the SSRI class, but may not meet the full criteria for depression. The term Dysthymia is as good as any to define this disorder. Among the recognized settings of dysthymia is the setting of patients who are in chronic pain. These patients are at increased risk of suicidality, even though they may not fulfill the complete criteria for "Depression." The psychiatric literature is loaded with the current argument that discontinuation of antidepressants often leads to return of symptoms. Thus, since the medication is safe, there are no serious long-term sequelae, we continue the medication to avoid patient discomfort. While the patient may not have provided symptoms that meet the full criteria for depression, her SSRI may be extremely valuable in allowing her to deal with life more productively. Thus, I am not skeptical of the use of Prozac in this patient, nor would I discontinue the medication (see suggestions below). In fact, as noted above, I would try to increase the dose.

Suggestions and discussion:

1. Morphine pump is a possibility, but it may not be the first choice, because the patient has not received any non-narcotic medications that are available and effective for pain.

2. Any of the following medications, alone or in combination with others, might be of great assistance to this patient in the management of pain:

- A tricyclic, preferably amitriptyline or imipramine, but nortriptyline might also be of assistance. Protriptyline has also been used in the setting of pain, and desipramine might provide some relief of pain along with an energizing element.
- Other antidepressants may also be of assistance: Serzone, Effexor, Remeron, trazodone, Wellbutrin.
- An anticonvulsant such as Neurontin, Trileptal, Topamax, Gabitril, or carbamazepine is often highly effective. In my experience, Neurontin is the drug of choice, but this is not exclusive.
- Occasionally, a very low dose of neuroleptic, such as 0.25g of Risperdal (one to three times a day), is also helpful.

3. In addition to the above medications, the patient might benefit from increased Prozac or a trial of the newest medication in the group of SSRI's – Lexapro. While it is unusual to combine SSRI's, the addition of a small amount of Lexapro might be useful. I would not discontinue Prozac in order to give a trial of Lexapro. It seems prudent to attempt to increase Prozac before adding another SSRI. While the SSRI's have not been remarkably striking in settings of chronic pain, my experience is that when dysthymic depression is relieved, in general, the patient is better, and much more capable of dealing with misfortunes.

4. While Dr. Barth's report is replete with the evidence for somatization tendencies, I found a number of characteristics contradictory to this diagnosis. In general, somatization is a style of illness behavior that is difficult to diagnose without extended observation of the patient. In other words, it is a pattern of behavior that often cannot be diagnosed in a single sitting. Usually, the patient gives a history of "I've been ill all my life," a tendency which I could not document. There is commonly a family history of illness behavior and/or substance abuse, neither of which I obtained despite a lengthy review of her family. Somatizing patients usually do not report marked improvement with SSRI's, and they are not likely to work extended factory jobs consistent with this patient's history. The patient also gave me a history of treatment with a number of benzodiazepines, all of which she reportedly discontinued because "they made me feel drugged." This is not a common report among patients with somatization, who tend to use any anxiolytics to the degree that doctors will prescribe them. While it is certainly possible that the patient tailored her report to me based on her knowledge of Dr. Barth's report, I doubt that she is sufficiently aware of the symptom cluster to alter all the above details.

Pamela E. Parker, M.D.

# EXHIBIT "12"

FEB 23 2006 10:26                                    16033348122        P.01/16

FEB.17.2006  1:40PM   LIB MUT/STL                     NO.781     P.2

2 97967

Keyplate

**UAB UNIVERSITY HOSPITAL**

**CLINIC CHART**

CASE NO. **MR# 215-61-81**    NAME _____    **BROWN, BELINDA   PAGE 1**

## 2-14-06 CLINICAL PSYCHIATRIC DIAGNOSTIC EVALUATION

**Referral:** I was asked to review the records of Belinda Brown by Vacova Berryhill and to conduct an evaluation to determine whether or not Ms. Brown would be appropriate from a psychological perspective for an implanted stimulator trial.

**Time:** 60 minutes

**Medical History:** This will not be summarized in great detail; that has occurred elsewhere, most significantly in the January 16 report of David William Johnson MD. Basically Ms. Brown was injured at work in 1993 in a lifting incident. She has had 2 back surgeries but has experienced ongoing pain. She has received a number of pain interventions including various blocks, TENS, and a numbers of combinations of medications. She continues to receive pain management services from Dr. Ervin Moore.

Mrs. Brown describes two major sites and types of pain: low back pain and radiating bilateral leg pain. She says that her current medication regime of Oxycontin 40mgs QID, Lorcet 10 QID, Mobic, and Lidoderm patch help her back pain substantially to the point that she described this as no longer a very significant problem. She says she takes this medication on a time contingent basis and "religiously so". She says these medications do not help her leg pain which she says radiates down both legs to her toes and which she described as sharp, stabbing and constant. Her current functional limitations seem to be primarily secondary to her leg pain rather than low back pain. The only pain relieving maneuver she could describe was sitting in a recliner; she notes that she often winds up sleeping in the recliner because she cannot get comfortable in a lying position. Activities which aggravate pain include getting up from a sitting to standing position, walking (20 to 30 minutes maximum), standing and riding and or driving a car. She feels like these symptoms have gradually been getting worse and more disabling over time. She also describes "numbness" at times in her feet particularly her right foot. Sleep is disturbed by pain. She said she could take sleeping pills but prefers not to because they make her groggy and she needs to be alert through the day. She tries to minimize day time napping but will often do so up to an hour at a time. Appetite is fair; she has lost about 70 pounds secondary to purposeful dieting. She denies dysphoria now but acknowledges significant depression earlier post injury which responded well to Prozac initially and now Cymbalta. Again earlier post injury she was frequently tearful, felt hopeless etc. but was never suicidal by her report. She feels she has "accepted" the fact that has chronic pain and is trying to go on with that limitation. She again denies current suicidal ideation and is hopeful for her future although some of that hope is clearly attributed to a positive response to the stimulator. Energy levels are described as within normal limits. She has had some falls where her feet go "numb" if she is walking long distances. She has become increasingly house bound because of these difficulties.

**Psychosocial History:** Ms. Brown grew up in a family with a strict father who is a State Trooper. She dropped out of school in the 11th grade in retrospect probably as an escape /

**CONFIDENTIAL**

FEB 23 2006 10:2:     16033348122     P.02/16

FEB.17.2006   1:40PM    LIB MUT/STL.      NO.781    P.3

**UAB** UNIVERSITY HOSPITAL
**CLINIC CHART**

Keyplate

CASE NO.   MR# 215-61-81     NAME          **BROWN, BELINDA   PAGE 2**

rebellion against those rules. This early marriage was characterized by an abusive relationship with her husband and ended in divorce. She and her current husband have been married for 30 years. She has a grown son and daughter, both married and by her report and doing very well. Mrs. Brown and her husband are about to move to Georgia to be closer to his work and are planning their "dream home". Mrs. Brown is excited about this prospect. Her daughter and her family will be moving next door to them as well. Mrs. Brown indicated that her daughter exhibited some "wildness" in her teen age years but has settled down and matured and she denied any current concern or stressors related to her children. She and her husband adopted a niece, now 10 years old, who has some developmental delays but again she says she is improving and receiving appropriate services now. She denied alcohol use, quit smoking 15 years ago and denied ever being involved in street drugs. She idealized her current marriage and said she can't imagine having a better, more supportive husband; she became briefly tearful when describing this. She denied being prone to worry.

**Collateral Report:** Mr. Brown was interviewed briefly alone. He states that his wife has significant indications of pain including crying out and "hollering" in her sleep. He verifies that she often winds up sleeping on the couch or the recliner and that she has fallen on occasion with the result that she will not do much shopping alone now which is not at all consistent with her pre injury status. He sees some deterioration in her function over time and admitted fear that if things do not improve that she will require some form of increasing physical assistance. He noted that she is occasionally "confused" and attributes this to her medication regime. I asked about her driving. He indicates that a couple of years ago she drove through a barricade at night and a few days later backed her brand new car into the garage; no further driving mishaps reported of late. He would certainly be interested in seeing her hopefully able to reduce medications and would like to see her "happier" like her old self. He and his wife used to go on vacations but they no longer do so because of driving limitations, and both indicated an interest in returning to this.

Mrs. Brown was working at a manufacturing plant at the time of her injury. She is currently on disability. She reports that her pain levels can be highly variable depending on what she is doing. At the time of our interview she said her pain levels were only about 3 to 4 out of ten but they can rise to "11 out of 10" if she is up too much, walking too much etc. She and her husband have been pursuing a stimulator trial for a couple of years; they have retained an attorney to help move this process along.

**Behavioral Observation:** Mrs. Brown came late to interview; they had gotten lost which is a frequent occurrence here. Physical appearance was good; pain behavior minimal much of the time including when she walked in and as she sat for our interview that approached an hour. Pain behavior was much more evident when getting up from a sitting to standing position after interview which she did with considerable apparent difficulty. Her walking pace was also noticeably slower.

**Test Administered:** MMPI II, Pain Anxiety Symptom Scale (PASS); Coping with Pain Scale.

**CONFIDENTIAL**

 UNIVERSITY
HOSPITAL
CLINIC CHART

Keyplate

CASE NO. __MR# 215-61-81__ __NAME_____    **BROWN, BELINDA   PAGE 3**

**Results:** Results on the PASS revealed generally only a moderate amount of pain related anxiety. On this self report measure, the relative absence of catastrophizing about, escaping and or avoiding stimuli related to pain and physiological arousal are all positive signs. On the Coping with Pain measure Mrs. Brown again scored low on catastrophizing. High scores on catastrophizing scales tend to be generally poor prognostic indicators for optimal coping with pain. She uses positive self statements about her pain, tries to divert attention and ignore sensations. She also tends to pray/hope that things will get better, a common coping approach which while not optimal because of it's implied passivity, is none the less common in this culture. Mrs. Brown completed the MMPI II accurately. Results are valid, and in contrast to the apparent outcome in other testing arenas, results are for the most part within normal limits. Results suggest moderate perfectionist tendencies and a tendency to perceive herself and wish to be perceived by others in the most positive, morally upright light. Results of the Validity Scales do not support a deliberate "slanting" of results. This is further supported by review of the Wiener-Harmon subtle- obvious sub scales for scales 2, 3, 4, 6, and 9. When people are either trying to enhance their levels of distress or cover up pathology, there is often a considerable discrepancy between these subscales. In this case, the subtle and obvious subscale score items from those scales were equally likely to have been endorsed. The elevations of scales 1, 3, and 8, often seen in medical populations, and in particular chronic pain populations, are apparent here but are not nearly as elevated as we often see. A review of somatic items that load on these scales suggests that they are consistent with symptoms secondary to her pain and may not necessarily reflect anxiety or psychopathology- based symptom reports. Items such as "parts of my body often have a feeling of burning, tingling, crawling or like going to sleep; I feel weak all over much of the time; I have numbness in one or more places on my skin; I have little or no pain;" in a person with no chronic pain or medical difficulties, could carry a very different meaning than is the case for persons like Mrs. Brown who have a chronic pain syndrome. Other results suggest a high need for attention/affection and a moderate degree of rumination/worrying which she tends to minimize.

**Impressions:** Mrs. Brown presented to me very differently than I would have expected from someone who would very much like to have a trial of the stimulator. She did not present with an apparent enhancement of pain symptoms and or psychological distress. Rather, her behavioral presentation, self report, and test results were all reasonably consistent. She certainly by self report appears to be coping emotionally and psychologically better than she did early post injury and by all measures sees herself as being happy and in a good place in her life. She describes her low back pain component which sounds nociceptive/mechanical as well controlled by current medications, and is focused on trying to achieve better relief of her radiating bilateral leg pain which sounds more neuropathic in origin. Major contraindications to implantation according to some who have reviewed the literature in this area suggest the following: active psychosis, major uncontrolled depression or anxiety or mood disorders, active suicidal and or homicidal behavior, serious alcohol or drug addiction problems, serious cognitive deficits, severe sleep disturbance.

Other than sleep disturbance which sounds like it is secondary to pain rather than psychosocial stressors, Mrs. Brown does not present with any of these exclusion criteria. The fact that she

PS-14200 Rev. 5/00

**CONFIDENTIAL**

FEB 23 2006 10:2     16033340122     P.04/16

FEB.17.2006   1:43PM   LIB MUT/STL     NO.781   P.5

 UNIVERSITY
HOSPITAL
**CLINIC CHART**

Keyplate

CASE NO. __MR# 215-61-81__    NAME _____ **BROWN, BELINDA   PAGE 4**

already has disability and that the Browns seem financially stable and with minimal psychosocial stressors by her report, are additional good prognostic indicators.

**Recommendations:** (1) I see no contraindication currently for proceeding with a stimulator trial. Mrs. Brown has been well informed about the stimulator trial process. A minor caution is that she may be expecting too much pain relief and this may need to be clarified for her. (2) She has expressed goals of increasing activity including pursuing pleasurable activities with her husband such as vacations, getting out of the house more etc. It should be made clear that being able to become more functional and active would be a major reason for pursuing a stimulator and that she'll be expected to be active in that process. (3) Mrs. Brown clearly has high hopes for this procedure. If anything, she is perhaps to uncritically hopeful about its outcome. She will need to be reminded, as I have already, that she need to be as objective an observer of her response to a trial as she can be and since there are always risks to surgery, that if the benefits are likely to be minimal despite her disappointment, it would be better not to proceed.

DSM-IV: Pain disorder with psychological/medical conditions; 307.89

J. Scott Richards, Ph.D., ABPP
Director of Research
Vice-Chair, Department of PM&R
Licensed Clinical Psychologist

CC: Vacova Berryhill (Adjuster), Oliver Kitchens, file



CONFIDENTIAL

# EXHIBIT "13"



*Medical Claims File Review Department*
*4100 International Parkway; Suite 1010*
*Carrollton, TX 75007*

WORKERS' COMPENSATION
PHYSICIAN ADVISOR REVIEW

January 14, 2005

CLAIM #: WC544297967
INJURY DATE: 2/2/93
INTRACORP FS#: 32498

CLAIMANT: BROWN, BELINDA GAIL

I have reviewed the available medical records on Belinda Gail Brown and answered the questions submitted. I have not examined this patient, nor is there an existing patient-doctor relationship. The opinions expressed in this review were based on the weight of clinical evidence as documented in the provided medical records, under the assumption that the material is true and correct. In some instances, additional resources are referenced such as jurisdictional regulations, accepted research findings, ACOEM CA guides, *Intracorp's Optimal Treatment Guidelines* (OTG), professional journals and published medical articles.

Summary of Records

Records received for review are approximately 4 plus inches in height and include notes from Pamela Parker, M.D., undated; Prescription Solutions, undated; Dr. Michael David Wilhote and Associates; PT prescription; Robert Summerline, PhD; Gaylon Rogers, M.D.; Jubal Watts, M.D.; Woodland Clinic notes; NGPC Pain Management Consult; EMG/nerve conduction studies; Southeastern Neuroscience Evaluation for morphine pump; R. Rex Harris, M.D., IME; Karen Carlson, M.D.; bone density testing and sundry other information.

This patient has a date of injury on February 2, 1993 when she was 36 years of age. She was lifting a bundle of sewing materials and something popped in her back and her legs went numb. Height is 5'8", weight 223 pounds.

1993 notes again February 17, 1993, impression is acute disc. She is tender to palpation over the right SI joint. She has back pain. Has had two weeks of bedrest with anti-inflammatory medication and pain meds without relief. Will hospitalize for physical therapy 2 times daily and traction and IV meds. Note is by Daniel Michael, M.D., orthopedic surgeon.

March 3, 1993 Dr. Michael notes she was in the hospital with acute disc syndrome, bulging disc on CT that responded to epidural steroid injections. Gradually getting recurrence of her symptoms and will repeat the epidural steroid injection. She is to remain off work. She cannot sit longer than 30-40 minutes without severe pain.

March 31, 1993 bone scan is ordered to make sure no activity is present around the spondylosis. She is referred to physical therapy. Prescription is present for home exercise program 2-3 times a week for 2 weeks.

Page 2

January 14, 2005
Physician Advisor Review
Brown, Belinda Gail

<u>Summary of Records</u>

May 5, 1993 Dr. Michaels, she is to increase her activities. Still has marked restriction in range of motion.

June 9, 1993 follow up, complains of symptoms and not doing well with her home exercise program. She is referred back to supervised physical therapy. A back brace is provided.

April 10, 1994 Robert Summerline, PhD notes state she was simply moving clothing articles out of her way and felt something pull in her back. The history therefore has changed from a pop to a pull. Eventually she underwent surgery by Gaylon Rogers, M.D. on October 21, 1993 and then physical therapy. This testing states that she has a tendency to accentuate unfavorable characteristics and manifest on testing to exaggeration of symptoms. Tendency to quickly resign when faced with difficult test items. She has self demeaning comments and inferiority feelings marking her major depression and are a part of her overall and enduring characterological structure, a set of chronic self defeating attitudes and depressive emotions that are intrinsic to her psychological makeup. Somatization is likely to be a well used defense depressive characteristics, low energy, cognitive difficulty, guilt feelings, low self esteem, pessimism, sad mood and learned helplessness. It is stated that patient felt she might not be able to return to work at her former job and other jobs were to be reviewed. Diagnosis is major depression, recurrent, severe without psychotic features, psychological affecting physical condition, generalized anxiety disorder, parent/child problems, marital problems, mixed personality disorder with histrionic, dependent, passive aggressive and self defeating characteristics, chronic back pain and tension headaches, psychosocial stressors of marital discord, parent/child problems, financial difficulty, remarriage and weight changes. Global assessment functioning moderate to severe. States patient presented with a higher level of pain than would be predicted on the basis of her injury. He feels pain level is certainly influenced by a variety of emotional and social factors some of which have been in her life for many, many years. Treatment with progressive muscle relaxation training, hypnotic techniques and cognitive behavioral procedures with supportive counseling framework is recommended. If able to solicit cooperation he feels improvement in overall physical and emotional functioning could be made. The report further states moderate level of pathology exists in the overall personality structure of the patient. She may experience periods of marked emotional, cognitive or behavioral dysfunctions. She has marked dependency needs that are most notable in her case as well as marked and variable moods. Behavior has become increasingly unpredictable, irritable and pessimistic.

September 27, 1994 Gaylon Rogers note states sitting at home and doing pretty well. She is sleeping without difficulty. Much improved since surgery. He feels she is at MMI. Discontinuation of therapy. She can attend her husband's company's exercise center, as she likes. He feels that she will have minor symptoms off an on. She could not return to her previous type work. Possibly she could do sedentary work and a 30% impairment rating is given. Jubal Watts, M.D. in December 1995 notes are present, states EMG's are positive for carpal tunnel syndrome and she is to have surgery.

January 11, 1996 she had the carpal tunnel syndrome and this is healing.

March 5, 1996 Dr. Watts. Her hand is doing well but her back is still hurting her severely. She is gaining weight.

April 2, 1996 follow-up, wrists are doing well. Back flares up on occasion. Prescription is given of Ultram. She is on a walking program and lost 12 pounds. June 21, 1996 follow up, back flare up. She is given Lorcet and Naprelan.

Page 3

January 14, 2005
Physician Advisor Review
Brown, Belinda Gail

Summary of Records

July 8, 1996 complaining of pain, aching, soreness in the low back requiring Lorcet at times. Her uric acid level was elevated. Medicines for gout are prescribed.

July 17, 1996 complains of back hurting her some and pain down the leg. She has crepitus and grinding under her kneecap. Exercises were given or shown to her for this condition. Follow up there is a flare up after mopping and vacuuming.

March 11, 1997 flare up. Husband is ill and having to pull and tug on him. Lorcet is given and a Medrol Dosepak as well as Oruvail.

Follow up continues April 8, 1997, back pain.

June 30, 1997 she is doing yard work and flares up her back. X-rays looked good. Injection given.

April 10, 1998 Dr. Watts follow-up. Complaint is of pain and soreness, helping husband work on the car and then picked up a box and sprained her back again. Injection given.

February 19, 1999 patient is seen by David Scruggs, PA for Dr. Watts. Complaints are of increased back pain. Injection given and a Medrol Dosepak, which did not help. States back surgery was performed in 1993 and 1994. Leg pain is described as being greater than the back pain. MRI is ordered.

March 1, 1999 Dr. Watts states MRI showed no surgical lesions, just continued disc disease and no new problems. Trigger point injections given. He suggests the pain clinic.

March 15, 1999 same. April 5, 1999 doing better on her medicine. September 3, 1999 follow-up states she is seeing Dr. Stewart and had a cortisone injection with no help. Now she is on Lorcet 10 and Robaxin per Dr. Stewart. Her pain appears mainly musculoskeletal and diagnosis is lumbar radiculopathy and degenerative disease. Trigger points are given.

March 28, 2000 follow-up Dr. Watts. She is complaining of popping and snapping in the low back where she had facet joint arthritis. MRI shows quite a bit of facet joint arthritis primarily at the L5-S1 level. He schedules her for a facet joint block.

April 11, 2000 she could not get the injection due to technical reasons. Dr. Watts gives her a Depo Medrol injection and refills Celebrex.

May 2, 2000 she starts seeing Efrim Moore, M.D. There are complaints of low back pain. She is status post fusion with hardware 1993 and second surgery to remove the hardware 6 months later. Meds listed are Maxzide, Celebrex, Synthroid, Lorcet 10 I q. 3 hours, Prozac, Allopurinol and an Estrogen patch. She has been disabled since February 1993 it states. On exam there was only minimal tenderness over the lumbar paraspinal muscles. Straight leg raise was negative. She had no tenderness over the sacroiliac joints and facets. Her strength was 5/5. Diagnosis is failed back syndrome. He is switching her to OxyContin 40 mg b.i.d. and OxyIR 5 mg q.i.d. p.r.n. breakthrough pain. He feels that she can switch from Lorcet to OxyCodone, that she would be a candidate for a morphine pump trial.

April 4, 2000, June 5, 2000 follow-up notes. Patient's weight is at 241.5 pounds. Meds are refilled.

Page 4

January 14, 2005
Physician Advisor Review
Brown, Belinda Gail

<u>Summary of Records</u>

June 20, 2000 Dr. Watts follow-up. States she is now seeing a pain specialist. She did fall and flared up her back. He gives her an injection of Depo Medrol and some Mobic.

July 18, 2000 Woodland Clinic. Medications given.

January 17, 2001, Woodland Clinic. States she fell asleep and contused her nose on the computer. Wants an injection. Complaints are of leg pain and numbness. She continues to be followed at Woodland Clinic March 21, 2001. Back pain, note handwritten; hard to read.

March 27, 2001 there is a typed letter for Prozac by Jeff Stewart, M.D.

December 5, 2001 at follow up with Efrin Moore, M.D. complaints are of low back pain. Medications are OxyContin 20 mg q.i.d. and OxyIR 40 mg q.i.d. Also on Prozac, Claritin, Normodyne. She is on a diuretic and a hormone replacement patch. Diagnosis now is bilateral SI joint arthropathy and failed back syndrome. Recommendation is for bilateral SI joint injection. He feels pain is from the sacroiliac areas and not the fusion. There are no radicular symptoms. He is going to take over her medications from Dr. Stewart.

May 10, 2001 follow-up Dr. Moore, low back pain. Pain is moderate in nature. Medications are OxyContin 20 mg q.i.d., Ambien 10 mg at night.

May 24, 2004 Dr. Moore, SI joint injection given and medication to include Mobic. He is following the patient every 4 weeks.

May 31, 2001 follow-up, severe pain in site of injection. In the past injections into her hips helped. She has minimal tenderness over the SI joint. IM Depo Medrol is given.

June 21, 2001 follow-up complaints are of right posterior hip pain, two weeks relief with the injection to the right hip. Plan is right SI joint injections. Medication is refilled. Hen an EMG of the bilateral lower extremities is prescribed and performed by a physical therapist instead of a neurologist. Standard of care would be a neurologist to perform this study. The physical therapist's report states there is mild slowing of the left common peroneal nerve, otherwise nerve conduction normal. EMG states consistent with lumbar radiculitis. Minimal findings appear to be reported in the documentation reviewed.

July 5, 2001 follow-up Dr. Moore, complaints are of back pain and leg pain. He is requesting selective nerve root injections, right L4-5, L5-S1 and left L5-S1.

July 19, 2001 follow-up Dr. Moore right posterior hip pain, right sacroiliac joint injection given and medications refilled. She continues to be followed monthly by Dr. Moore.

August 16, 2001 back and right leg pain, right hip complaints controlled with Depo Medrol injections. Right SI joint injected.

August 30, 2001 nerve root injections left L4-5.

September 6, 2001 back and bilateral lower extremity complaints, marked improvement in the left leg post injections. Right lower extremity pain continues and right sacroiliac joint and left sacroiliac joint injections are given.

Page 5

January 14, 2005
Physician Advisor Review
Brown, Belinda Gail

<u>Summary of Records</u>

October 4, 2001 follow up, continues to improve on the left, right is painful. Left SI joint injection given. October 25, 2001 injection given nerve root sleeve bilaterally L4-5.

November 8, 2001 follow-up good temporary relief of her pain but complains of left SI joint and this is once again injected. Medications are refilled, advised she would probably benefit from an intrathecal pump placement or spinal cord stimulator.

November 21, 2001 letter, Dr. Moore stating the SI joint pain is secondary to her surgery and initial injury.

December 6, 2001 increased lower extremity symptoms, medicines refilled. Schedule an intrathecal morphine trial.

January 10, 2001 follow-up, Dr. Moore, SI joint injected by her primary care physician one week ago. Diagnosis is failed back syndrome.

February 7, 2002 follow-up Dr. Moore. Left SI joint injected, medicines refilled.

February 21, 2002 patient has a psychological review consult for morphine pump placement by Robert Barth, PhD. He states that there are contraindications for a proposed treatment plan. He feels alternatives have not yet been exhausted, feels she will not benefit most likely from further treatment for her pain complaints. Consult process produced much evidence that indicated the patient's pain complaints are objectively more consistent with an exaggeration scenario rather than with a valid presentation of pain.

March 1, 2002 Dr. Moore, letter of medical necessity for the Prozac for the work injury.

March 7, 2002 Dr. Moore continues to follow right SI joint is injected, meds refilled.

April 4, 2002 increased pain due to viral infection. She ran out of OxyContin and is using Lorcet 10 she had at home. Right SI joint is injected, medications refilled. She was instructed not to use any other narcotics with the OxyContin.

May 2, 2002 right SI joint injected.

May 30, 2002 same complaints, left SI joint injected. June 17, 2002 letter regarding neurobehavioral status examination by Dr. Moore stating exam by Dr. Barth was extremely unfair to Ms. Brown.

June 27, 2002 follow-up Dr. Moore, same meds refilled.

August 1, 2002 follow-up patient same, meds refilled. OxyContin 40 mg t.i.d., Lorcet 12 q.i.d. for breakthrough pain, Mobic and Restoril.

August 29, 2002 follow-up Dr. Moore, increased complaints of lower extremity pain.

September 28, 2002 states she fell in Logan's Restaurant two days ago from water on the floor. Pain is reported however as being decreased from her August 29, 2002 visit.

October 24, 2002 increased pain over the hips, left SI joint injection given and medications.

Page 6

January 14, 2005
Physician Advisor Review
Brown, Belinda Gail

Summary of Records

November 21, 2002 Dr. Moore, left SI joint injected.

December 12, 2002 injection helped 2 ½ weeks, repeats the left SI joint injection and refills medications.
Patient then continues to be seen monthly by Dr. Moore.

January 9, 2003 left SI joint injected. February 6, 2003 right SI joint injection. March 6, 2003 complaining
of bruising and hold injections. April 3, 2003 pain severe over the last month. Left SI joint injected. May
1, 2003 left SI joint injected. Prozac changed to Paxil CR. May 22, 2003 states injections helped, still
complains of bruising. Referral to Dr. Watts and endocrinologist regarding bruising and if this is from the
Depo Medrol.

June 26, 2003 letter, Dr. Moore regarding once again SI joint injections. Follow-up on this same date and
is awaiting Dr. Watts' referral.

July 17, 2003 follow-up. August 14, 2003 letter regarding IME by R. Rex Harris, M.D. states she is at
MMI and disabled. Treatment is appropriate. Diagnosis is chronic pain.

August 21, 2003 follow-up, Dr. Moore she received Depo Medrol injection from her family physician last
week and pain has been bearable. Medications refilled.

September 18, 2003 Dr. Moore states she received 80 mg of Depo Medrol from her family practice
physician two weeks ago and now has bruising over the past week on both forearms. Medications refilled.
She is back on Prozac, now also has Lidoderm patches.

October 16, 2003 medications refilled. November 7, 2003 Ronald Watts, M.D. evaluation states she has
Cushing syndrome and adrenal insufficiency from chronic use of steroids. He feels she needs a bone
density test for osteoporosis. He gives her diet information and orders labs.

November 11, 2003 Karen Carlson, M.D. feels that the request for the spinal infusion pump should be
denied based on unsuitability of patient for this treatment.

November 13, 2003 follow-up, Dr. Moore. Complaints are still of back and bilateral lower extremity.
Blood tests were normal except for cortisol levels and a prescription for Hydrocortone 10 mg, 2 in the a.m.
and 1 at night has been ordered by Dr. Watts. Also awaiting bone density testing. Medications refilled.

December 11, 2003 follow-up Dr. Moore. Bone density on December 26, 2003 is performed showing
borderline osteopenia and at elevated risk for fracture compared to age match group. Follow-ups continue
monthly by Dr. Moore, January 8, 2004, February 5, 2004, March 4, 2004, on this follow-up she had Depo
Medrol injections by her family care physician once again into the hip, 1-1 ½ weeks ago. Also now
complaining of some type of foot pain, possible neuroma and stated might help with an injection. She then
continues to have left SI joint injections on April 1, 2004, April 29, 2004, May 27, 2004, June 24, 2004,
and July 24, 2004. On July 22, 2004 EMG/nerve conduction is ordered for bilateral lower extremities due
to numbness and tingling, weakness in the legs.

August 19, 2004 follow-up, Dr. Moore states that she fell secondary to her toe 1 ½ weeks ago. Left SI joint
injected.

Page 7

January 14, 2005
Physician Advisor Review
Brown, Belinda Gail

<u>Summary of Records</u>

October 14, 2004 Dr. Moore. He did not see her for the month before. Medications were written by her primary care physician. She is complaining of numbness in the legs, left greater than right. Her bruising has returned to the forearms. EMG reports. In his notes it stated she showed left lumbosacral radiculopathy, which is quite active at L5 and also chronic to a significant degree at L5, also active at S1 more so than L4 and chronic to mild degree at L4 and S1. Right lower lumbosacral radiculopathy, which is mildly active at L5 and S1 and chronic to a mild degree at L5. Evidence of dying back, neuropathic assessed upon the posterior tibial nerve bilaterally, more so on the right than on the left but significantly so bilaterally and presumably in context of ongoing and prior proximal nerve root compromise at L5-S1 levels. He adds Neurontin 600 mg at bedtime to her medications and states she may benefit from a spinal cord stimulator. Hold on steroid injections due to bruising.

November 11, 2004 patient could not tolerate the Neurontin. States she fell two days ago, her leg gave way. Request is for a spinal cord stimulator trial.

December 17, 2004 letter regarding verbal denial of the spinal cord stimulator.

There is a letter from Pamela Parker, M.D., she sees the patient when she is age 46 years for morphine pump evaluation. States she has had 2 low back surgeries after date of injury without help. She had epidural steroid injections, nerve blocks, TENS unit, all without major help. Numerous medications and narcotics without help. Impression is chronic pain secondary to injury. There are many possible pain management possibilities that have been overlooked in her care. She states she has dysthymic disorder. She suggests that morphine pump possibility would be in future but may not be the first choice due to her not receiving any nonnarcotic medications that are available and effective for pain such as tricyclic medications, other antidepressants, anticonvulsants, occasionally very low dose of neurolytics like Risperdal, increase in Prozac or add Lexapro. She states that Dr. Barth's report is replete with evidence of somatization tendencies. She found a number of characteristics contradictory to that diagnosis. Date of this examination could not be found, however, if patient was 46 years of age this would have to have been sometime in 2003. It appears a previous request for spinal intrathecal pump was denied in May 2002 and that request was agreed to by Karen Carlson, M.D. Request for spinal cord stimulator trial was denied by Dr. Sheehy December 7, 2004 on the basis of no neuropathic medications in the claimant's drug regimen, in addition found not to be an appropriate candidate for an intrathecal pump in 2002 based on psychological issues.

<u>Physician Advisor Determination/Answer to Questions</u>

<u>*Is the claimant an appropriate candidate emotionally, psychologically for the spinal cord stimulator? Have all other noninvasive treatments been exhausted?*</u>

This patient in the records that I reviewed, it appears, has not had any form of neurolysis or nerve oblation treatment to perhaps control her chronic pain. I feel that this would be a viable trial prior to spinal cord stimulator. I do feel that this patient needs to be managed with her chronic pain by another avenue other than the high intake of narcotics that she is taking and I also feel there has been overuse of injection therapy into the SI joints on a monthly basis. Usual and customary for injection therapy, patient should get relief for at least 2-3 months, therefore injection type therapy is performed approximately every 3 months period to the most painful area if relief is for a sustained period of time. This does not appear to have been the case with this patient. Therefore as far as reasonable and necessary treatment I feel that there has been over utilization in injection therapy into the SI joints. Usually and customary would be every 3-4 months for these types of injections. Noninvasive treatment, I feel patient should try to be seen for neurolysis oblation

Page 8

January 14, 2005
Physician Advisor Review
Brown, Belinda Gail

<u>Physician Advisor Determination/Answer to Questions</u>

treatments of the nerve roots to decrease her pain. If this would fail and failure would be that she is not able to reduce narcotic intakes then I feel that a trial of a spinal cord stimulator would be appropriate. The permanent placement, I feel this patient to justify the spinal cord stimulator should be weaned off of all narcotic medications. If this is not the plan then I feel that the spinal cord stimulator would not be indicated as oral narcotic intake in this patient's care needs to be decreased through either oblation therapy or spinal cord stimulator. SI joint injections and trigger point injections should not be given at a frequency of greater than every 3-4 months.

In summary I do feel that a change in this patient's treatment needs to be made and as above, I feel these two suggestions are the next step with weaning of narcotic medication to the goal with both of these procedures and that goal needs to be met with weaning of narcotics and treating patient with nonnarcotic medications and Lidoderm patch and from the psychological standpoint it appears that this patient would benefit from psychological intervention along with her treatment program due to Dr. Barth's records reviewed and Dr. Summerline's records that have been reviewed.

If the claimant's condition changes, precertification is recommended for future or ongoing medical treatment. Professional opinions contained herein that address fees and/or treatment are intended to serve only as a guideline to assist with payment decisions, which remain based on the discretion and professional expertise of the claims handler. If you disagree with this determination, you do have recourse to an appeal by submitting a written request to the claims adjuster. Please submit any documentation that you feel supports the medical necessity of the service(s) in question. *Intracorp* attempts to respond to appeals within ten business days.

Sincerely,

*David William Johnson DC, M.D*

David William Johnson, D.C., M.D.
Board Certified in Physical Medicine and Rehabilitation
and by The American Board of Independent Medical Examiners
Member of the American Academy of Pain Management
IN State License #01035716A
IN Chiro License #08000480
MI State License # 4301050366
KY State License #29121
KY Chiro #3411
VA License #0101040935

# EXHIBIT "14"

38268868975

544297967

**HEALTHSOUTH SURGERY CENTER OF ATLANTA, L.P.**
1140 Hammond Drive, Suite 6200
Atlanta, Georgia 30328
Telephone 770-551-9944  -  Fax 770-551-8826

### OPERATIVE REPORT

PATIENT: BROWN, BELINDA
#8946 (DOB:05/20/1956)
DATE OF SURGERY: 06/30/06

OPERATING SURGEON:     Plas T. James, M.D.
ADMITTING SURGEON:     Efrin Moore, M.D.

PREOPERATIVE DIAGNOSES:
1. Lumbar failed back syndrome.
2. Lumbar radiculopathy.

POSTOPERATIVE DIAGNOSES:
1. Lumbar failed back syndrome.
2. Lumbar radiculopathy.

OPERATION PERFORMED:
1. T-11, T-12 and L-1 central laminectomy.
2. Lysis of adhesions at T-12 and T-11.

OPERATIVE PROCEDURE:
After premedication, the patient was brought to the operating room. The patient was intubated on the recovery room gurney. The patient was placed prone on pillows and knees flexed. The patient's posterior lumbar spine was prepped and draped in normal sterile fashion after locating the L1-2 interval on lateral C-arm. The patient was given Ancef 1 gram preoperatively.

We then made an incision over the L1-2 interspace. Dissection was carried down through the dorsal lumbar fascia. We dissected off the spinous process of L-1 and L-2 and used Cobb elevator to dissect the superior aspect off of the lamina of L-1 and L-2. We then identified the ligament between L-1 and L-2, down to ligamentum flavum. We used combination of Woodson and nerve hook to enter the epidural space at L1-2. We then accomplished a small first L-1 lumbar laminectomy. However, we were unable to pass the lead due to scar tissue; thus, we proceeded to do complete laminectomy of L-1, T-12, and T-11.

I was able to pass the lead up to the superior body of T-11. We used the Woodson to lyse adhesions and accomplished the goal. After this, Dr. Efrin Moore proceeded to complete the operation by placing dorsal column stimulator.

38288868975

**HEALTHSOUTH SURGERY CENTER OF ATLANTA, L.P.**
**OPERATIVE REPORT - PAGE 2**

PATIENT: BROWN, BELINDA
#8946 (DOB:05/20/1956)
DATE OF SURGERY: 06/30/06

54406207062 7

The patient _____ placed FloSeal and Thrombin soaked
Gelfoam. I closed the wound with 2-0 Vicryl, skin with staples.

PTJ/MST:db
D 06/30/06
T 07/01/06                    _____
(#559427)                     PLAS T. JAMES, M.D.
cc: Dr. Plas T. James
    3200 Downward Circle Suite 500
    Atlanta, GA 30327
cc: Dr. Efrin Moore

30208060975

## HEALTHSOUTH SURGERY CENTER OF ATLANTA, L.P.
### 1140 Hammond Drive, Suite F-6100
### Atlanta, Georgia 30328
### Telephone 770-551-9944  -  Fax 770-551-9826

SU
20070628

## PROCEDURE REPORT

PATIENT: BROWN, BELINDA
#8946
DATE OF PROCEDURE:  06/30/06

PROCEDURE PERFORMED BY:   Efrim Moore, M.D.
                          Plas T. James, M.D.

ANESTHESIA:General

PREPROCEDURE DIAGNOSES:
1.Failed back syndrome.
2.Lumbar radiculopathy.

POSTPROCEDURE DIAGNOSES:
1.Failed back syndrome.
2.Lumbar radiculopathy.

PROCEDURE PERFORMED:
1.Lumbar laminotomy/laminectomy by Dr. Plas James.
2.Spinal cord stimulator lead placement.
3.Connection of spinal cord stimulator generator.

INDICATIONS FOR PROCEDURE:
This is a 49-year-old female with longstanding history of pain in
her lower back.   Pain began after she sustained work-related
injury in approximately 1993.   She underwent two lumbar spine
surgeries, seemed to have severe pain in the back and down both
lower extremities.   She also complained of numbness and weakness
down both lower extremities.   She is status post a successful
spinal cord stimulator trial lead implantation in April 2006,
however was unable to have the permanent lead placed despite
several attempts due to extensive scarring in the epidural space.
 Therefore, she presents today for placement of surgical spinal
cord stimulator lead.

DESCRIPTION OF PROCEDURE:
After consent was obtained, IV was placed in the patient's hand.
She was taken to the operating room and placed on the table in the
prone position after general anesthesia was performed by the
Anesthesia Team.   Her back was prepped with Betadine solution and
draped in a sterile fashion.

Next, an incision was made over the midback area and a
laminotomy/laminectomy was performed by Dr. James and dictated on
a separate note.

30208060975

HEALTHSOUTH SURGERY CENTER OF ATLANTA, L.P.
PROCEDURE REPORT - PAGE 2

PATIENT:  BROWN, BELINDA
#8946
DATE OF PROCEDURE:  06/30/06

544062070629

Once access to the epidural space was obtained, a Medtronic spinal
cord stimulator 2 x 4 hinged lead #3999 was advanced into the
epidural space at the midline to the top of T-11.   The lead was
checked with use of the fluoroscope.  Next, the anchor was placed
on the lead.  It was secured to the fascia with 0 silk sutures.

The incision over the right posterior hip pocket where the
generator was placed was then opened.   A tunnelling rod was used
to tunnel from the back incision area and exited the right
posterior hip generator pocket.   The extensions were connected to
a cradle on the tunneling rod and it was pulled back into the
midback incision area.   Next, a boot was placed over each lead.
The lead was then connected to the extension and secured in place
with hex wrench.   The boot was then placed over this connection
and secured in place with 0 silk ties.   The extension connection
was pulled midway across the tunnel area.   The excess spinal cord
stimulator lead was pulled in the midback and the fascial and
subcutaneous area were closed by Dr. James.   The extension was
then connected to the spinal cord stimulator generator and placed
back into the pump pocket.

Interrogation of the system was carried out by the Medtronic
representative and the system appeared to be working fine in that
all connections were good.   The subcutaneous tissue of the right
posterior pocket was closed with 3-0 Vicryl and the skin was
approximated with staples.   Incision was covered with 4 x 4s and
Tegaderm.

The patient tolerated the procedure well, was taken to the
recovery room in satisfactory condition.  No complications noted.

EM/MST:db
D 06/30/06
T 07/01/06
(#559430)                        _____
                                 EFRIM MOORE, M.D.

# EXHIBIT "15"

1. SI joint dysfunction
2. Failed back syndrome

The plan is:
1. Refill medications
2. Follow up in six weeks because she is leaving for an extensive vacation

| | | | |
|---|---|---|---|
| Topic: Litigation | | Title: Notice | |
| Created By: SHOUSE II,ROBERT W. | | Modified By: | |
| Created On: 07/12/2002 | | Modified On: | |
| Associated Document: N | | | |

Journal Entry:

Recd letter from Clt Atty Oliver Kitchens in Roanoke, AL 334-863-2181. Demands that the prozac as well as the pain pump be immediately authorized or litigation will be pursued. Also states that a letter from Dr. Moore is enclosed, but it is not. Called and requested that a copy of the letter be faxed to me. They will fax it this afternoon.

| | | | |
|---|---|---|---|
| Topic: Action Plan | | Title: 30 Day | |
| Created By: SHOUSE II,ROBERT W. | | Modified By: | |
| Created On: 07/01/2002 | | Modified On: | |
| Associated Document: N | | | |

Journal Entry:

IME results have been forwarded to authorized doctor, but no word from him as of yet. Will fu for his thoughts and once recd will either negotiate a nominal settlement or get paper IME's done and proceed with legal action.

| | | | |
|---|---|---|---|
| Topic: Medical | | Title: NCM | |
| Created By: CHAPPELL,HELEN S. | | Modified By: | |
| Created On: 06/21/2002 | | Modified On: | |
| Associated Document: N | | | |

Journal Entry:

spoke with Bob in claims. This file has reached a legal standstill. He advised me to close until further notice.

| | | | |
|---|---|---|---|
| Topic: Medical | | Title: NCM-IME | |
| Created By: CHAPPELL,HELEN S. | | Modified By: | |
| Created On: 06/07/2002 | | Modified On: | |
| Associated Document: N | | | |

Journal Entry:

Sent E mail to Bob asking if he needs me to do anything on file.

| | | | |
|---|---|---|---|
| Topic: Medical | | Title: CBU PSC | |
| Created By: SMITH,JACQUELYN B. | | Modified By: | |
| Created On: 06/05/2002 | | Modified On: | |
| Associated Document: N | | | |

Journal Entry:

Icn:26020570222000          Message: Provider states that they have not received this payment. Please do stop-
pay and reissue.

# EXHIBIT "16"

| Topic: QCM | Title: Medical |
|---|---|
| Created By: KNOLLMEYER,EDWARD J. | Modified By: |
| Created On: 06/03/2002 | Modified On: |
| Associated Document: N | |

Journal Entry:

Action Plan:
Good work up of the case by Bob. Action plans have been posted and implemented. Second opinion obtained and sent to the tx MD for his opinion.

Reserves:
LCE is appropriate.

Comments:
The clt is 46 yrs old. If the treating MD does not agree to reduce or eliminate work related treatment. Need to get additional IME's etc and also modify the LCE/ECE.   The cbu code is correct.

| Topic: Medical | Title: Medical Report-Barth-5/28/02 |
|---|---|
| Created By: SHOUSE II,ROBERT W. | Modified By: |
| Created On: 05/30/2002 | Modified On: |
| Associated Document: N | |

Journal Entry:

Recd Dr. Barth's Pain and Mental Health Consultations.  Barth specifically advises against the implantation of a pain pump for several reasons.

I. Anxiety Disorder
II Somatoform Disorder
III Personality Disorders
IV The Claims Context of the Proposed Treatment
V The fact that not all alternatives have been exhausted

CLT also meets the guidelines for malingering and likely has tried to manipulate the tests.  Copies of the reports have been sent to Dr. Moore for his review.

| Topic: Action Plan | Title: CST |
|---|---|
| Created By: SHOUSE II,ROBERT W. | Modified By: |
| Created On: 05/30/2002 | Modified On: |
| Associated Document: N | |

Journal Entry:

Jurisdiction: AL
Target Outcome: Meds Settled
Outcome Target Date: 9/30/02
Mgd Care Rn: Yes
Current Status: Old Med only claim.  Work check has shown CLT is likely more active than she lets on.  Psych evaluate with Dr. Barth has been done, the report has been recd today but I have not yet had a chance to review it.

Issues/Opportunities: CLT current problems may not be related to our injury, current Dr. is discussing the implantation of a pain pump.

Action Plan: Review Dr. Barth report and send to Tx Dr. for his review and response.  If his response is positive, will discuss settlement with Team Manager Knollmeyer.  If not, will consider additional IME's and resubmit those to the Tx Dr.

# EXHIBIT "17"

| Topic: Action Plan | Title: 30 Day Review |
|---|---|
| Created By: JACKSON,WESLEY S. | Modified By: |
| Created On: 01/06/2003 | Modified On: |
| Associated Document: N | |

Journal Entry:

Jurisdiction: AL
Target Outcome: manage medical
Outcome Target Date:
Mgd Care Rn: Shea
Current Status: Old medical only case. The treatment has spiked a huge amt in the last 2 years. Dr wants a pain pump. We sent to Dr Barth who disputed the pain pump was needed and related. The c/a disagreed and wanted a psyche panel. We put one together but can find no one to see her. I finally found one who would and the claiamnt agreed to see her (Dr. Parker). I am setting this up but it is taking a while.

Issues/Opportunities:

Action Plan 1) Assign Shea to do a file review. We will then evaluate if add'l IME's are needed. I want to find out why the treatment spiked so in the last few years

Discussed With Customer:

| Topic: Action Plan | Title: LCE |
|---|---|
| Created By: JACKSON,WESLEY S. | Modified By: |
| Created On: 01/06/2003 | Modified On: |
| Associated Document: N | |

Journal Entry:

I reviewing the medical LCE, I ran the 5 year spreadsheet to see what the claimant is treating for:

We have spent $40,877 in the last 5 years. $14360 in 2001, and 12700 in 2002. This is up from. This is up from an average for less than $5000 per year in the 3 years prior. $7500 of the $ spent in 2002 was for RX's.

$10,000 in the last 2 years paid in office visits to Dr Efrim Moore. They want to put a pain pump in her, but we questioning the necessity of this based on the report of Dr Barth. We are seeking another IME.

We will need to seek other opinions in the forms of IME's as the treatment is likely excessive.

ISO shows nothing.

The claimant is 47 years old with a 30 year life expectancy. At $12000 per year, this would equate to a $360,000 medical reserve. However, given the fact the the treatment has spiked in last 2 years, I recommend an $8000 compromise for the life expectancy, and I will have Shea review and start setting other IME's and file reviews....I recommend a $240,000 medical reserve at this time, and a $10,000 EXP reserve.

| Topic: Medical | Title: Medical Management |
|---|---|
| Created By: JACKSON,WESLEY S. | Modified By: |
| Created On: 01/06/2003 | Modified On: |
| Associated Document: N | |

# EXHIBIT "18"

Discussed With Customer:

| Topic: Medical | Title: Follow up |
|---|---|
| Created By: CLEMONS,LARRY W. | Modified By: |
| Created On: 03/06/2003 | Modified On: |
| Associated Document: N | |

Journal Entry: .

We are still waiting to get Dr Parker's opinion so we can make a decision about the pain pump. I called her office today and was told the previous contact, Laurie, was no longer employed there. I did speak to Linda and explained what I was looking for. She was going to pull the chart, speak with Dr Parker and call me back to let me know if she dictated her report yet.

| Topic: Action Plan | Title: 30 Day Review |
|---|---|
| Created By: JACKSON,WESLEY S. | Modified By: |
| Created On: 02/07/2003 | Modified On: |
| Associated Document: N | |

Journal Entry:

The formal AP is still current. The original pain pump referral agreed that the claimant was not a pain pump candidate. We have not gotten the report back from Dr Parker on this yet. We had to send the claimant there after the c/a demanded a panel. We could not find a panel doctor to see the claimant but the c/a agreed to let the claimant be seen.

I left a message for Laurie at Dr Parkers' office to call me regarding the report. I will proceed from there

| Topic: Treatment | Title: MD |
|---|---|
| Created By: JACKSON,WESLEY S. | Modified By: |
| Created On: 01/13/2003 | Modified On: |
| Associated Document: N | |

Journal Entry:

The doctor we are referring to for psyche eval is Pam Parker 205-414-6097

| Topic: Management Overview | Title: H.O. Examining |
|---|---|
| Created By: PILLEY JR,ARTHUR G. | Modified By: |
| Created On: 01/08/2003 | Modified On: |
| Associated Document: N | |

Journal Entry:

Annual Rec:

Concur with Med LCE increase.  Eager to see what "2nd opinion" psychiatrist Parker says about Clt's fitness for a pain pump!  If he blesses the idea, then our Med LCE may need further increase.

If Dr. Parker does concur that Clt should get a pump, what course-of-action should we take. Litigate?  Saw "DJ" mentioned.  Would that be in circuit court, with decision by a judge?  If so, could Clt raise the issue again, if his condition changed in the future, and MD recommended a pump at some later date?

I'm curious to know what c/a's motive is in pushing so hard for the pump given psych Barth's opinion and contra-indication?!?  Driving up case value, and posturing for med settlement?  If so, perhaps we should "oblige" him by evaluating case for settlement upon receipt of Dr. Parker's eval, based on the likelihood that Clt will eventually get a pump, and make 'em an offer!  Your thoughts?

# EXHIBIT "19"

the best possible outcome? Make referral to CCMU regarding issue of pain pump.  Consider referral to RMD  to further develop medical treatment strategy.

| | |
|---|---|
| Topic:   Medical | Title:   NCM--Dr Karen Carlson |
| Created By:   MINTON,DONNA L. | Modified By: |
| Created On:   10/23/2003 | Modified On: |
| Associated Document:   N | |

Journal Entry:

Medical records mailed to Dr Carlson at 3901 Premier North Dr., Tampa, Fl 33624

| | |
|---|---|
| Topic:   Medical | Title:   NCM-RMD referral |
| Created By:   MINTON,DONNA L. | Modified By: |
| Created On:   10/22/2003 | Modified On: |
| Associated Document:   N | |

Journal Entry:

Sent via iCase Manager today to Dr Carlson for review and recommendations regarding authorization for the spinal infusion pump.

| | |
|---|---|
| Topic:   Medical | Title:   NCM-HEMT File Review/Recs   Page 2 |
| Created By:   MINTON,DONNA L. | Modified By:   MINTON,DONNA L. |
| Created On:   10/22/2003 | Modified On:   10/22/2003 |
| Associated Document:   N | |

Journal Entry:

1. Dr Barth, Psychologist—Dr Barth evaluated the claimant 5/02 and advised against the spinal infusion pump for several reasons including his assessment  of anxiety disorder, somatoform disorder, personality disorder, malingering, and because not all alternatives had been exhausted. (apparently Dr Barth was not in possession of all medical notes regarding all the treatment alternatives that had been attempted)

2. Dr Parker, Psychiatrist--Dr Parker evaluated the claimant 1/13/03 and recommended trying more pharmacologic management before implantation of the pain pump.

3. Dr Harris, Orthopedic Surgeon--Dr Harris evaluated the claimant 8/14/03 and recommended her present condition was causally related to her 1993 work injury; the claimant was permanent and totally disabled and that her current treatment plan was appropriate. He did not address the appropriateness of the spinal infusion pump.

In summary it appears there are three physicians recommending the pump--Dr Moore, the attending;  Dr Parker, psychiatrist, who only recommended the pump should not be the 1st choice above pharmacology attempts; and Dr Harris, orthopedic surgeon who did not specifically address the pump but felt her present condition was completely related to the original WC injury on 2/2/93 and that her treatment plan had been appropriate.

===============================================================================

Recommendations:

1. Due to the varying opinions, recommend a final RMD evaluation for both causation and appropriateness of the request for a spinal infusion pump.

# EXHIBIT "20"

Review and discuss possible IME by another pain management Dr.
Ran IWE and discuss possible settlement

Raising LCE per authority

| Topic:  Action Plan | Title:  LCE |
|---|---|
| Created By:  KNOLLMEYER,EDWARD J. | Modified By: |
| Created On:  02/24/2004 | Modified On: |
| Associated Document:  N | |

Journal Entry:

Set the medical LCE at $585,000 plus the paid to date.    This is $15000 for 34 years and 50% of the case of the
pump and replacements.  At this point it is unclear whether or not the pump will actually be utilized.    The HO
recommendation was a LCE of $852071 plus the paid to date.

| Topic:  Management Overview | Title:  HEMT-LCE |
|---|---|
| Created By:  WRIGHT,TIMOTHY L. | Modified By: |
| Created On:  02/19/2004 | Modified On: |
| Associated Document:  N | |

Journal Entry:

Claimant is 47 year old female. Claimant suffered low back injury resulting in fusion surgery.  Consideration being
given to insert of pain pump.  Med opinions differ regarding the necessity for same.

Claimant averages 15k / year in med
Claimant has LE 34 years.

Anticipate med cost based on LE  15K x 34 = $510,000
Pump replacement every 6 yrs @25k/yr x 5=  125, 000  totaling $635K

Paid to date $192071 + $635k = 827071

Requesting ok to strengthen current LCE by $412,181.

| Topic:  Medical | Title:  HEMT Provider |
|---|---|
| Created By:  BERRYHILL,VACOVA M. | Modified By: |
| Created On:  02/16/2004 | Modified On: |
| Associated Document:  N | |

Journal Entry:

Wrote Dr Moore for updated medical records

| Topic:  Medical | Title:  HEMT HO Response |
|---|---|
| Created By:  BERRYHILL,VACOVA M. | Modified By:  WRIGHT,TIMOTHY L. |
| Created On:  02/16/2004 | Modified On:  02/19/2004 |
| Associated Document:  N | |

Journal Entry:

Dr Carlson gave her opinion on the pain pump on 11/13/03 in which she recommended no pump. IME from Dr Harris

# EXHIBIT "21"

Journal Entry:

Did the attorney ever return the call?

Do we have a settlement opportunity?

Time to follow-up.

| | |
|---|---|
| Topic:   Medical | Title:   HEMT Medical Moore 3/31/05 |
| Created By:   BERRYHILL,VACOVA M. | Modified By: |
| Created On:   04/12/2005 | Modified On: |
| Associated Document:   N | |

Journal Entry:

Follow up for apain in back & down both lower extremities. Pain continues to be severe. SHe ahs continued numbness & weakness in both lower extremities & numbness in both feet. Impression: Failed back syndrome Lumbar radiculopathy. Plan Refill medications & follow up in 4 wks

| | |
|---|---|
| Topic:   Medical | Title:   HEMT-NCM-Limited/90 Day Assess P3 |
| Created By:   MINTON,DONNA L. | Modified By:   MINTON,DONNA L. |
| Created On:   03/29/2005 | Modified On:   03/29/2005 |
| Associated Document:   N | |

Journal Entry:

Next steps to reach Target Outcome==limited assign received 1/4/2005 for an appeal of the DCS denial has been completed. Potential medical savings based on SCS denial  totals approximately $275,000. The SCS unit itself costs approx $20,000.  All related surgery charges, anesthesia, trial charges, etc totals approximately $20,000. The claimant has a remaining life expectancy of 34.8 years and depending on her usage of the stimulator, replacement on average is required every 7 years (possible 5 replacements for this clmt==$200,000. There are also frequent complications associated including lead displacement, infection, etc==$35,000).

The limited assignment has been completed per TCS requested outcome and will be closed at this time.

| | |
|---|---|
| Topic:   Medical | Title:   HEMT-NCM-Limited/90 Day Assess P2 |
| Created By:   MINTON,DONNA L. | Modified By:   MINTON,DONNA L. |
| Created On:   03/29/2005 | Modified On:   03/29/2005 |
| Associated Document:   N | |

Journal Entry:

Assessment: (effectiveness of medical tx, tx compliance, medical barriers, RTW issues): == Feb 2005 notes reflect the clmt c/o pain in her back & down both lower extremities. Pain is severe & there is continued numbness/weakness of both LEs. The clmt admits to increasing difficulty with ambulation & increasing diff with sleep.

Dr Moore has adamantly disputed Intracorp's Peer Recs writing on 3/18/2005 that the recommendations were ridiculous due to several nerve roots being involved. Dr Moore documented that performing a neurolysis or nerve oblation would not be feasible due to the multiple nerve root involvement .

Current meds in $MCS appear both related & medically reasonable. Meds are being provided by Progressive.

Should further review of the SCS becomes necessary, the clmt will require a psy eval by a provider selected by LM--a psychologist not associated with Dr Moore's practice, etc.  Any further discussions for a SCS will also require addit RMD review

Medical LCEs appropriate.==This 47 yr old AL female has a remaining life expectancy of 34.8 yrs. The average amount spent for medical treatment for the past 5 yrs between 2000 and 2004 has been stable at $16,855/yr. The

primary cost driver is pharmacy. The claimant's pharmacy costs will not diminish and will in fact increase over her remainin life expectancy. Without any implantable pain devices, the claimant will require $586,554 for pharmacy only over her life span. Subsequently the current medical LCE is very low.

| Topic:  Medical | Title:   HEMT-NCM-Limited/90 Day Assess P1 |
|---|---|
| Created By:   MINTON, DONNA L. | Modified By: |
| Created On:   03/29/2005 | Modified On: |
| Associated Document:   N | |

Journal Entry:

Information obtained:==47 yr old Alabama female sustained a low back injury 2/2/93 while lifting bundles of pants.

Diagnosis==SI Joint Dysfunction, Arthritis; Failed Lumbar Back Syndrome; Bruising due to possible Depo Medrol Injections

Co-Morbid medical conditions include: Obesity, HTN, arthritis, tobacco abuse and mental health issues

Treatment:==S/P Lumbar fusion 10/21/1993; Medications including: Temazepam, Prozac, Oxycontin, Mobic, Hydrocodone and frequent steroid injections.

Last Office Visit: ==N/A                              Next Office Visit:==N/A

NCM Goal:==New limited assignment received 1/4/2005 for an appeal of the denied SCS by Dr Carlson, RMD, on 11/13/2003; Dr Sheehy, RMD, on 12/4/2004; and following an Intracorp peer review completed 1/19/2005 who recommended neurolysis or nerve oblation treatment prior to any SCS trial.

Key Accomplishments: ==1) NCM coordinated Intracorp peer review regarding SCS implantation 1/19/2005

PPO Status:==N/A

Case strategy discussed with: ==TCS, Vacova Berryhill. The TCS mailed a copy of the 1/19/2005 Intracorp Peer Review report to Dr Moore. The TCS also has contacted the plaintiff attorney to discuss possible medical settlement and that answer remains outstanding.

| Topic:  Medical | Title:   CBU MSR PMC RX PEND |
|---|---|
| Created By:   PULLEY, LORI L. | Modified By: |
| Created On:   03/28/2005 | Modified On: |
| Associated Document:   N | |

Journal Entry:

rx pmc 030305 lorcet lidoderm mobic pay or deny
icn 26050730618200

| Topic:   Action Plan | Title:   HEMT 60 Day Action Plan  High/Med |
|---|---|
| Created By:   BERRYHILL, VACOVA M. | Modified By: |
| Created On:   03/23/2005 | Modified On: |
| Associated Document:   N | |

Journal Entry:

This is an AI medical only file. Clt has been denied a spinal cord stimulator per peer review clt is not a candidate. I have left several messages for clt's atty to call me to  discuss possible settlement. He has not returned any of my calls.

# EXHIBIT "22"

Are the Indemnity, Medical and Expense reserves adequate?Maintain the current estimate.

Are there any recommendations or changes to the action plan that would be beneficial in managing this file to achieve the best possible outcome? Let's continue our efforts to contact the attorney to determine if settlement is a possibility. If not, we need to address the necessity for DCS. Is the claimant the appropriate candidate? Determine whether PSY profile has been completed. Make sure to follow the decision tree protocols for handling.

| Topic:    Action Plan | Title:    HEMT 90 Day Action Plan med/med |
|---|---|
| Created By:    BERRYHILL, VACOVA M. | Modified By: |
| Created On:    04/20/2005 | Modified On: |
| Associated Document:    N | |

Journal Entry:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* HEMT Subsequent Action Plan \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

What have been the results of our efforts since the prior action plan in managing the issues that were identified as impacting costs and continuing disability?
This is an AL medical only file. Dr Moore is now wanting to do a DCS. RMD denied and Dr appealed a peer review was completed.Peer review Dr also did not recommend a DCS.

What is the ongoing strategy to manage this file within the next 90 days and the anticipated outcome?
Continue to manage medical and review for any c/r issues  90 days
Continue to try ans talk with atty    30 days

Has there been any change in selected resources?
No

Are there Indemnity and/or Medical settlement options?
Possible, Once I talk with atty will know for sure

Are the Indemnity, Medical and Expense reserves adequate?
Yes

Have we discussed with the customer?
No

Date and name of contact:

| Topic:    Management Overview | Title:    HEMT Response to TM |
|---|---|
| Created By:    BERRYHILL, VACOVA M. | Modified By: |
| Created On:    04/20/2005 | Modified On: |
| Associated Document:    N | |

Journal Entry:

Atty still has not returned any of my calls. Until atty calls will not know if clt will possibly settled. I will leave yet another message

| Topic:    Management Overview | Title:    Review |
|---|---|
| Created By:    WRIGHT, TIMOTHY L. | Modified By: |
| Created On:    04/19/2005 | Modified On: |
| Associated Document:    N | |

# EXHIBIT "23"

We can go ahead and evaluate for settlement enough though I do not know if clt is on SSDi and Medicare. But I think she would be.

| | |
|---|---|
| Topic: Management Overview | Title: H.O. Examining -- Tickler Review |
| Created By: PILLEY JR,ARTHUR G. | Modified By: PILLEY JR,ARTHUR G. |
| Created On: 07/07/2005 | Modified On: 07/07/2005 |
| Associated Document: N | |

Journal Entry:

What is the next step in the Alabama utilization review process on the DCS issue.     Is the next move up to Clt/atty to appeal?    Or, D.J. action?    In view of the "tort of outrage" available to Clt in Alabama, what would happen if Clt's appeal ratified Dr. Moore's recommendation for the stimulator -- and we then insisted, per our internal protocol, on a psychological evaluation to confirm that Clt is a suitable candidate for an implantable device?

Although we don't want to put-the-cart-before-the-horse, what are your thoughts on the following proposal:   Clt's evaluation by a MUTUALLY agreed upon psychologist or psychiatrist, whose opinion we, and Dr. Moore, will abide by. I.e., if psych says Clt isn't an appropriate candidate, then NO stimulator (and no morphine pump either!). Conversely, if Clt gets psych clearance, then we will authorize a trial DCS, with Dr. Moore agreeing to provide us with demonstrable evidence of stim's success in reducing Clt's pain  -- e.g., a reduction in Clt's pain Rx intake would be one measure;  less frequent ESIs would be yet another!  -- as a prerequisite for our authorization for a permanent DCS implant?

Paid Med is $220,594.    MCS shows $12,157 spent in 2005 to date.    Costs escalating:  range had been $15K - $17K annually during the previous 4 years.

Alternative approach:   Inasmuch as c/a won't reply to our settlement overtures, why not price case and make a realistic offer, contingent, of course, upon resolution of the Medicare issue?


E-mail to 482 & 223.

| | |
|---|---|
| Topic: Medical | Title: HEMT Authorization Moore 6/9/05 |
| Created By: BERRYHILL,VACOVA M. | Modified By: |
| Created On: 06/15/2005 | Modified On: |
| Associated Document: N | |

Journal Entry:

Cancel authorization request for eval to Dr Orr.

| | |
|---|---|
| Topic: Action Plan | Title: HEMT 60 Day Action Plan High/Med |
| Created By: BERRYHILL,VACOVA M. | Modified By: |
| Created On: 06/15/2005 | Modified On: |
| Associated Document: N | |

Journal Entry:

This is an AL medical only file. Dr Moore is now wanting to do a DCS. RMD denied and Dr appealed a peer review was completed.Peer review Dr also did not recommend a DCS.  We have had 2 peer reviews regardin DCS. Treating Dr disagrees with both. I have left several message for atty to call me but he has not responded

Continue to try and contact atty regarding settlement.  30 days
Continue to manage medical and review for c/r issues  90 days
If will not settle review for psych eval          90 days

# EXHIBIT "24"

Journal Entry:

Impression: Clt presented to me very differently than I would have expected from someone who would very much like to have a trial of the stimulator. She did not present with an apparent enhancement of pain symptoms and or psychological distress. Rather her behavior presentation, self and test results were all reasonably consistent. She certainly by self report appears to be coping emotionally & psychological better than she did earlt post injury & by all measures sees herself as being happy & in a good place in her life. She describes her low back pain component which nonciceptive/mechanical as well controlled by current medications & is focused on trying to achieve better relief of her radiating bilateral leg pain which sounds more neuropathic in orgin. Major contraindications to implantation according to some who have reviewed the literature int his area suggest the following: active psychosis,major uncontrolled depression or anxiety or mood disorders,active suicidal &/or homicidal behavior serious alcohol or drug addiction problems, serious cognitive deficits, sever sleep disturbance. The fact that she already has disability & that the Browns seem financially stable & with minimal psychosocial stressors by her report are additional good prognostic indicators.

Recommendations: I see no contraindication currently for proceeding with a stimulator trial. Mrs Brown has been well informed about the stimulator trial process. A minor caution is that she may be expecting too much pain relief & this may need to be clarified for her. She has expressed goals of increasing activity including pursuing pleasurable activities with her husband such as vacations,getting out of the house more etc. It should be made clear that being able to become more functional &

| Topic: Medical | Title: HEMT Records |
|---|---|
| Created By: BERRYHILL,VACOVA M. | Modified By: |
| Created On: 01/27/2006 | Modified On: |
| Associated Document: N | |

Journal Entry:

Records mailed to Dr Richards today

| Topic: Treatment | Title: HEMT Psych Eval |
|---|---|
| Created By: BERRYHILL,VACOVA M. | Modified By: |
| Created On: 01/27/2006 | Modified On: |
| Associated Document: N | |

Journal Entry:

Clt has an appt with Dr Richards at Spain Rehab in Birmingham AL on 2/13/06 at 9 am for psych eval in regards to SCS.

Emailed atty letter along with map. he is to advise clt of appt.

| Topic: Litigation | Title: HEMT Clts Atty Kitchens 1/25/06 |
|---|---|
| Created By: BERRYHILL,VACOVA M. | Modified By: |
| Created On: 01/26/2006 | Modified On: |
| Associated Document: N | |

Journal Entry:

I am in receipt of your letter dated 1/3/06 copy enclosed. Please be advised that three weeks has passed since you wrote me & we still have not received any further input from you. In the meantime Mrs. Brown continues to suffer greatly and probably continues to deteriorate and degenerate as well. In other words the longer you delay the more her pain and suffering increases, but probability of recovery decreases. I cannot stress to you how imperative it is that you act immediately on this matter. Failure to do so could result in dire consequences for both Mrs Brown and LM. Please be advised accordingly.

| Topic: Action Plan | Title: HEMT 30 Day Action Plan High Med |
|---|---|
| Created By: BERRYHILL,VACOVA M. | Modified By: |
| Created On: 01/24/2006 | Modified On: |
| Associated Document: N | |

| Topic: Litigation | Title: HEMT Ltr to Atty |
|---|---|
| Created By: BERRYHILL, VACOVA M. | Modified By: |
| Created On: 01/03/2006 | Modified On: |
| Associated Document: N | |

Journal Entry:

I have received and reviewed the report from Dr Daniel H. Serrato. I am in the process of trying to find a psychiatrist in the area who will do a psychological evaluation on Ms Belinda Brown. This is needed prior to authorization of any type of implantable device.
Once the appointment has been set, I will notify you with the information.

| Topic: Medical | Title: HEMT Medical Moore 12/8/05 |
|---|---|
| Created By: BERRYHILL, VACOVA M. | Modified By: |
| Created On: 12/27/2005 | Modified On: |
| Associated Document: N | |

Journal Entry:

Follow up for pain in her back and lower extremities. Complains of continued severe pain in both legs along with numbness and weakness. Also states she has been experiencing curling of second toes of each foot. and shooting pain through toes of both feet. Impression: failed back syndrome, Lumbar radiculopathy. Plan: Refill medications, Follow up in 4 weeks We are still awaiting approval from her WC carrier regarding spinal cord stimulator.

| Topic: Litigation | Title: HEMT Clt Atty Kitchens 12/13/05 |
|---|---|
| Created By: BERRYHILL, VACOVA M. | Modified By: |
| Created On: 12/27/2005 | Modified On: |
| Associated Document: N | |

Journal Entry:

Please find enclosed a report from Daniel H Serrato MD which states that Belinda Brown is an excelent candidate for dorsal column stimulator. I trust this report will be sufficient for LM to approve the stimulator for our client. Accordingly I ask that you so approve her promptly and notify me of the same.

| Topic: Action Plan | Title: HEMT 90 Day Action Plan High Med |
|---|---|
| Created By: BERRYHILL, VACOVA M. | Modified By: BERRYHILL, VACOVA M. |
| Created On: 12/27/2005 | Modified On: 12/27/2005 |
| Associated Document: N | |

Journal Entry:

************************ HEMT Subsequent Action Plan ************************

What have been the results of our efforts since the prior action plan in managing the issues that were identified as impacting costs and continuing disability?
This is an AL medical only file. Dr Moore is now wanting to do a SCS. RMD denied and Dr appealed a peer review was completed.Peer review Dr also did not recommend a SCS. We denied the SCS. Dr has not appealed. Dr Moore obtained a second opinion on the SCS. The second opinion agrees that clt is a candidate for SCS.

What is the ongoing strategy to manage this file within the next 90 days and the anticipated outcome?
Continue to manage medical and review for any c/r issues  90 days
Set up a psych eval  30 days
Continue to try and talk with atty   90 days
Assign onsite for annual visit   30 days

Has there been any change in selected resources?

Yes

Are there Indemnity and/or Medical settlement options?
Possible once I talk with Atty

Are the Indemnity, Medical and Expense reserves adequate?
Yes

Have we discussed with the customer?
No

Date and name of contact:


Txment Plan:
Clt see Dr Moore every month for chronic pain. He is treating conservatively with medications but does talk about a SCS every other month.


| Topic: Medical | Title: HEMT Medical Serrato 11/28/05 |
|---|---|
| Created By: BERRYHILL,VACOVA M. | Modified By: |
| Created On: 12/15/2005 | Modified On: |
| Associated Document: N | |

Journal Entry:

Dr Moore referred for 2nd opinion on Dorsal column stimulator. Opinion I feel that this patient is an excellent candidate for a dorsal cord stimulator. She will probably need the two leads in back to cover both legs well. She can eve possibley get some lumbar benefits from thjis but certainly wi her predominant leg pain bilaterally to feet. The dorsal cord stimulator would be the most effective treatment for this lady at this time and would not require any escalation of narcotic usage. I think she is excellent for this and agree with Dr Moore that she go on and at least trial this to see what sort of effect it has for her. I am going to generate a letter to Dr Moore confirming this.


| Topic: Medical | Title: HEMT Medical Moore 11/10/05 |
|---|---|
| Created By: BERRYHILL,VACOVA M. | Modified By: |
| Created On: 11/30/2005 | Modified On: |
| Associated Document: N | |

Journal Entry:

Follows up for pain in back and down both lower extremities. Pain continues to be severe in both areas with continued numbness and weakness down both lower extremity areas. Impression: failed back syndrome. Lumbar radiculopathy. Plan Refill medications followup in 4 wks.


| Topic: Action Plan | Title: HEMT 60 Day Action Plan Med Med |
|---|---|
| Created By: BERRYHILL,VACOVA M. | Modified By: |
| Created On: 11/30/2005 | Modified On: |
| Associated Document: N | |

Journal Entry:

This is an AL medical only file. Dr Moore is now wanting to do a SCS. RMD denied and Dr appealed a peer review was completed.Peer review Dr also did not recommend a SCS. We denied the SCS. Dr has not appealed.  I did not assign a RN as I was awaiting atty response regarding if any interest in settling case.


Continue to manage medical and review for any c/r issues  90 days
Continue to try and talk with atty    90 days
Assign onsite for annual visit    30 days

# EXHIBIT "25"

SCS trial is scheduled for 4/14 at Healthsouth. I authorized

| Topic: Medical | Title: HEMT Medical Moore 3/2/06 |
|---|---|
| Created By: BERRYHILL,VACOVA M. | Modified By: |
| Created On: 03/21/2006 | Modified On: |
| Associated Document: N | |

Journal Entry:

Complains of difficulty with ambulation which she states has became worst. Refill meds FU 4 wks

| Topic: Action Plan | Title: HEMT 90 Day Action Plan High Med |
|---|---|
| Created By: BERRYHILL,VACOVA M. | Modified By: |
| Created On: 03/21/2006 | Modified On: |
| Associated Document: N | |

Journal Entry:

*************************** HEMT Subsequent Action Plan ***************************

What have been the results of our efforts since the prior action plan in managing the issues that were identified as impacting costs and continuing disability?
This is an AL medical only file. Dr has recommended a SCS. Under AL law I had to authorize the SCS even though the value is questionable.

What is the ongoing strategy to manage this file within the next 90 days and the anticipated outcome?
Discuss future treatment plan with Dr 's office  5 days
Continue to manage medical and review for any c/r issues  90 days
Discuss possible settlement with atty again after SCS.  90 days
Assign RN for annual visit  2 days

Has there been any change in selected resources?
Yes assign RN to meet with Clt and Dr

Are there Indemnity and/or Medical settlement options?
Possible

Are the Indemnity, Medical and Expense reserves adequate?
No needs to be revisited after we learn what Dr's future treatment plan is.

Have we discussed with the customer?
No

Date and name of contact:

| Topic: Management Overview | Title: Review |
|---|---|
| Created By: KNOLLMEYER,EDWARD J. | Modified By: |
| Created On: 03/20/2006 | Modified On: |
| Associated Document: N | |

Journal Entry:

Under AL law TCS had to authorize the SCS even though there was a legitimate question as to it's value. The cost driver on this case has been medication, what drop in medication should we see once the SCS is implanted?  In the past 2 years $37000 have been spent on medical much of it for Rx.
Get a good understanding of the reduction in Rx cost that the SCS should have than calculate a new LCE, the current LCE is optimistic based on the clt's recent tx history, teh odds of the tx costs reducing annual costs via the SCS are slim a significant revision is likely needed.  What is the clt's interest in settlement?

# EXHIBIT "26"

_____Limited Assignment:   x
_____Full Case Management
_____High Value Assessment

Next appointment date/time:
UK as 4/14 is when the trial SCS is being done

Additional Instructions:
Need to determine what Dr Moore's plan of treatment if SCS is successful and what it is if not successful.

| Topic:   Medical | Title:   HEMT Medical Provider |
|---|---|
| Created By:   BERRYHILL,VACOVA M. | Modified By: |
| Created On:   03/27/2006 | Modified On: |
| Associated Document:   N | |

Journal Entry:

Spoke with Dr Moore's RN the goal is to reduce clts medications on SCS is implanted

| Topic:   Medical | Title:   HEMT-NCM-Mgmt Overview 3/20/06 |
|---|---|
| Created By:   MINTON,DONNA L | Modified By: |
| Created On:   03/27/2006 | Modified On: |
| Associated Document:   N | |

Journal Entry:

CM requested TCS to estimate what reduction there would be in polypharmacy once the SCS is implanted.

Unfortunately, the polypharmacy will not be reduced. The medications are for control of the low back pain. The SCS is being implanted for radicular pain in the lower extremitites.

Based on experience, would not anticipate any reduction in polypharmacy. NCM recommends calculating medical reserves with the anticipation of both drug and SCS expenses.

| Topic:   Litigation | Title:   HEMT Plaintiff Atty Kitchens 3/17/0 |
|---|---|
| Created By:   BERRYHILL,VACOVA M. | Modified By: |
| Created On:   03/22/2006 | Modified On: |
| Associated Document:   N | |

Journal Entry:

This is to conform the substance of our telephone conversation today as follows. Liberty Mutual will allow Belinda Brown to have a stimulator implanted. You relayed ot me that Mrs Brwon' doctor needs to contact yur and set up an appt for same to handled.

| Topic:   Treatment | Title:   HEMT Authorization |
|---|---|
| Created By:   BERRYHILL,VACOVA M. | Modified By: |
| Created On:   03/21/2006 | Modified On: |
| Associated Document:   N | |

Journal Entry:

Spoke with Dr Moore's nurse Barbara. Dr goal is to reduce medication clt is taking.

# EXHIBIT "27"

| Topic: Management Overview | Title: H.O. Examining – Tickler Review |
| Created By: PILLEY JR,ARTHUR G. | Modified By: |
| Created On: 04/06/2006 | Modified On: |
| Associated Document: N | |

Journal Entry:

DCS trial now scheduled 4/14/06 for this nearly 50-yof with chronic back pain.

Paid Med is $234,708.   MCS shows $21,256 spent in 2005, roughly $3500 higher than 2004.   RX has been the escalating cost-driver for the past 3 years:  60% of 2003 med costs, 75% of 2004's, and almost 89% of 2005 med bills.   If DCS trial succeeds, and Clt gets a permanent stimulator implant, then we must periodically scrutinize incoming medical reports and bills, to determine whether Dr. Moore's stated objective of reduced oral RX is being met. Med LCE should be re-assessed in that same vein.

When DCS has been completed and medical has stabilized, recommend that we obtain rated age quotes, price case and make Clt/atty a settlement offer, inclusive of and contingent upon Medicare issues.   If Clt/atty are interested, and their demand gives a realistic chance for settling, the we can then follow for MSA.

E-mail to 482.

| Topic: Medical | Title: HEMT MDCM |
| Created By: BERRYHILL,VACOVA M. | Modified By: |
| Created On: 03/30/2006 | Modified On: |
| Associated Document: N | |

Journal Entry:

THIS CLAIM HAS BEEN ASSIGNED TO LIZ VINNINGS
PARDUE-205-903-4245
INTRACORP ID-KDYVFSPH

| Topic: Medical | Title: HEMT MDCM |
| Created By: BERRYHILL,VACOVA M. | Modified By: |
| Created On: 03/30/2006 | Modified On: |
| Associated Document: N | |

Journal Entry:

Your MCM referral has been assigned
MCM Referral #1428243

| Topic: Disability | Title: mdcm referral coordination |
| Created By: RAMOS,GINA L. | Modified By: |
| Created On: 03/28/2006 | Modified On: |
| Associated Document: N | |

Journal Entry:

RN vendor referral sent to: (intracorp)     iCM Referral Number:1428243

# EXHIBIT "28"

| Topic: Administrative/Form Work | Title: HEMT Returned Check |
| Created By: BERRYHILL,VACOVA M. | Modified By: |
| Created On: 07/11/2006 | Modified On: |
| Associated Document: N | |

Journal Entry:

Check # 83498055 returned wrong address.

New address
118 pebblebrook Way
Temple GA 30179

| Topic: Management Overview | Title: HEMT Response to TM QCM |
| Created By: BERRYHILL,VACOVA M. | Modified By: BERRYHILL,VACOVA M. |
| Created On: 07/11/2006 | Modified On: 07/11/2006 |
| Associated Document: N | |

Journal Entry:

At this time we are not in position to settle. Clt having permanent SCS implanted on 6/30. Once recovery is done will try to settle again.

| Topic: QCM | Title: HEMT-review |
| Created By: WRIGHT,TIMOTHY L. | Modified By: |
| Created On: 07/10/2006 | Modified On: |
| Associated Document: N | |

Journal Entry:

Are we in position to consider all inclusive settlement? Let's explore potential.

| Topic: Action Plan | Title: HEMT 90 Day Action Plan High Med |
| Created By: BERRYHILL,VACOVA M. | Modified By: |
| Created On: 06/12/2006 | Modified On: |
| Associated Document: N | |

Journal Entry:

************************* HEMT Subsequent Action Plan *************************

What have been the results of our efforts since the prior action plan in managing the issues that were identified as impacting costs and continuing disability?
This is an AL medical only file. Clt had a SCS implanted recently. Dr is trying to reduce her meds now that SCS is implanted.

What is the ongoing strategy to manage this file within the next 90 days and the anticipated outcome?
Continue to manage medical and review for any c/r issues   90 days
Continue to discuss settlement with atty   90 days
Follow up on RN annual visit   10 days

Has there been any change in selected resources?
No

Are there Indemnity and/or Medical settlement options?
Possibly

Are the Indemnity, Medical and Expense reserves adequate?
Yes at this time

# EXHIBIT "29"

2. If a neurolysis or ablation procedure should fail, a trial of a SCS would be appropriate. For permanent placement, the claimant should be weaned off all narcotics. Recommended treatment would include non-narcotic medications and a Lidoderm path, If this is not the plan, the SCS would not be indicated as oral narcotic intake in this patient's care needs to be decreased either through oblation therapy or SCS. SI joint injections and trigger point injections should be given at a frequency of > 3-4 months.

3. In addition, psychological intervention is recommended.

| | |
|---|---|
| Topic:   Medical | Title:   HEMT Medical Moore 1/6/05 |
| Created By:   BERRYHILL,VACOVA M. | Modified By: |
| Created On:   01/19/2005 | Modified On: |
| Associated Document:   N | |

Journal Entry:

Pain in back and down both lower extremities. Pain continues to be severe in nature. Also has continued weakness down both lowe extremity areas. ALso complains of poor sleep due to leg pain which wakes her up at night & prevents her from going back to sleep. Unchanged. Impression Failed back syndrome. Lumbar radiculopathy. Plan: refill medications. Follow up in 4 weeks.

| | |
|---|---|
| Topic:   Management Overview | Title:   H.O. Examining -- Annual Rec |
| Created By:   PILLEY JR,ARTHUR G. | Modified By: |
| Created On:   01/17/2005 | Modified On: |
| Associated Document:   N | |

Journal Entry:

Concur with Claims Mgr's suggestion that we explore settlement, to include current dispute on spinal stimulator, as well as MSA if necessary.

Paid Med is $209,809.

Indme was settled in May 1995.

| | |
|---|---|
| Topic:   Medical | Title:   HEMT Copy work |
| Created By:   BERRYHILL,VACOVA M. | Modified By: |
| Created On:   01/11/2005 | Modified On: |
| Associated Document:   N | |

Journal Entry:

File to be copied

| | |
|---|---|
| Topic:   Management Overview | Title:   HEMT Overpayment |
| Created By:   BERRYHILL,VACOVA M. | Modified By: |
| Created On:   01/11/2005 | Modified On: |
| Associated Document:   N | |

Journal Entry:

I am the case owner handling this 1993 workers' compensation claim on Ms Belinda Gail Brown. In reviewing my file I learn that two checks were issued to your office for $775 for a date of service of 8/14/03. The invoice number is 87892822.
Please review you file and issue a refund in the amount of $775.00 to Liberty Mutual.
I appreciate your time and help in this matter.

Refund card opened

# EXHIBIT "30"

Journal Entry:

Dr Moore has requested an appeal of the SCS denial by Dr Sheehy, RMD, 12/7/2004.

File sent for copies of medical notes. Will initiate an external peer review with Intracorp for an opinion regarding appropriateness of the SCS implantation.

| Topic:   Medical | Title:   HEMT Appeal Ltr continue |
|---|---|
| Created By:   BERRYHILL,VACOVA M. | Modified By: |
| Created On:   12/27/2004 | Modified On: |
| Associated Document:   N | |

Journal Entry:

recommendation of increasing her narcotics is not a viable option. Narcotics will only give so much relief when nerve related pain is involved such as with radiculopathy. The patient is unable to have any reduction irritation of the nerve's body by steroidal-type mechanism. Spinal cord stimulator is the next option. With regard to her failing her trial this patient has never had a spinal cord stimulator trial. She has had a intrathecal pump trial in the past which was greater that 1 1/2 yrs ago. She passed hre trial however the psychologist that you had examine MS Browm was Dr Robert Barth in 2/02. This psychologist made suggestions regarding the patient not being a candidate for intrathecal pump without obviously either nott having the records or without taking the time to review the records. A case of this difficulty should at least taking the time to review the records A case of this difficulty should at least be referred to a reputable psychologist with specialization in pain field. In summary  Ms Brown is a candidate for spinal cord stimulation trial. A trial is a week or tow weeks test to see if the stimulation helps., She may undergo the trial & decide that she does not want to have it done. She should at least have that opportunity to see if this would help her pain. For the reasons stated above she is an excellent candidate. If needed please feel ffree to have a second appropriately trained pain management physician to see her and advise you as to whether or not a spinal cord stimulaor trial is warranted. I think a nurse cannot make this medical decision & a psychologist cannot make this medical decision regarding patient.

| Topic:   Medical | Title:   HEMT Appeal Ltr 12/17/04 |
|---|---|
| Created By:   BERRYHILL,VACOVA M. | Modified By: |
| Created On:   12/27/2004 | Modified On: |
| Associated Document:   N | |

Journal Entry:

This letter is in regards to a request for treatment for Ms Browm. i understand that you gave a verbal denial to our office regarding spinal cord stimulator trial for Ms Brown. Your reasons sited were patient has not been tried on any neuroleptic medications and that she failed a pump trial in the past & was not a candidate. We were completely shocked at the refusal to allow this patient to undergo appropriate treatment. With regards to your comments Ms Brown has been on Neurontin on at least two differenct occasions most recently 10/04. She was unable to tolerate the Neurontin even the bedtime dosage because it caused her to be drowsy the following day and out of it. THerefore because of her safety this medicine was discontinued. With respect to her not being a candidate for the spinal cord stimulatortrial I am not sure whether or not you have reviewed her records or not but on 8/27/04 patinet underwent EMG adn NCS which revealed left lumbosacral radiculopathy active at L5 chronic at L5 and also active at S1 and L4. Secondly it revealed a right lower lumbosacral radiculopathy active at L5-S1 and chronic at L5 and thirdly it revealed evidence of a dying back neuropathic effect upon the posterior tibial nerves bilaterally right greater than left but significant bilaterally due to ongoing and prior proximal nerve root compromise at L5 and S1 levels. One of the main indications for spincal cord stimulation is radiculopathy. Patients with leg pain worse than back pain are excellent candidates for spinal cord stimulation trial which is the situation is Ms Brown's case. She had been controlled with injections of steroids in past however because of endocrine problems & bruising this had to be discontinued. She is already on a high dose of pain medication & your

| Topic:   Action Plan | Title:   HEMT 60 Day Action Plan Med/High |
|---|---|
| Created By:   BERRYHILL,VACOVA M. | Modified By: |
| Created On:   12/27/2004 | Modified On: |
| Associated Document:   N | |

Journal Entry:

This is a AL medical only file. Clt is actively treating. Dr wants to do a DCS now, This has been denied per RMD. We are not going to authorize a trial either.

Copy file for MSA  30 days
Continue to manage medical and review for any c/r issues  90 days

| Topic:  Medical | Title:   HEMT Provider 12/7/04 |
|---|---|
| Created By:   BERRYHILL, VACOVA M. | Modified By: |
| Created On:   12/14/2004 | Modified On: |
| Associated Document:   N | |

Journal Entry:

Received a letter from Kristen Rosales at Dr Moore's requesting payment for DOS 6/24/04 and asking if a ijections which is a procedure done in the office had to be pre approved.

Wrote back and told her I would have DOS 6/24 paid and that anything other than a office visit has to be pre authorized

| Topic:  Medical | Title:   HEMT-NCM- Dr Moore |
|---|---|
| Created By:   MINTON,DONNA L. | Modified By: |
| Created On:   12/09/2004 | Modified On: |
| Associated Document:   N | |

Journal Entry:

Called Kristin at Dr Moore's office per TCS, Vacova Berryhill's request.

Kristin wanted to point out the claimant was tried on anti-neuropathic medication. I explained the claimant took Neurontin for 4 days and discontinued it herself due to complaints of dizziness. Records did not show attempts at changing the Neurontin dosage, frequency, or another medication.

Kristin did not understand why the claimant's being found not to be a good candidate for the intrathecal pump in 2002 would affect the request now for a DCS now. I explained it was a psychological evaluation by Dr Barth in 2002 that deemed she would not be a good candidate based on her mental evaluation/diagnoses and that her psycholgoical profile would not probably change regardless of the type of pain device being implanted.

| Topic:  Medical | Title:   HEMT-NCM-Tx Auth Outcome P1 |
|---|---|
| Created By:   MINTON,DONNA L. | Modified By: |
| Created On:   12/07/2004 | Modified On: |
| Associated Document:   N | |

Journal Entry:

Authorization Request From:===TCS, Vacova Berryhill

Prescribing Physician: ===Dr Moore                    Specialty: ===Pain management
Phone number: ===770-479-2322

Proposed Treatment, Duration and Setting:===Request for Dorsal Cord Stimulator.

Rationale for Treatment and Causal Relationship:==47 yr old AI female sustained a low back injury 2/2/93 while lifting bundles of pants. Diagnoses include: ) SI Joint Dysfunction, 2) Arthritis,  & 3) Failed Lumbar Back Syndrome.  The claimant C/O back pain & bilateral lower extremity pain. The treatment regime includes:  1) Temazepam, 2) Prozac, 3) Oxycontin, 4) Mobic, 5) Hydrocodone,  & 6) frequent steroid injections.

A previous request for a spinal intrathecal pump was denied in May 2002 based on an IME with Dr Barth who advised against the spinal infusion pump for several reasons including his assessment  of anxiety disorder, somatoform

# EXHIBIT "31"

Liberty Mutual Insurance Company



PO BOX 300
BRENTWOOD TN 37024-0300

Telephone: (800) 523-6906
Fax: (615) 371-9538

April 19, 2000

BELINDA GAIL BROWN
PO BOX 907
WEDOWEE AL 36278-0000

**FILE COPY**

RE:  Employee:          BELINDA GAIL   BROWN
     Social Security #:  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
     Employer:          HURLEY MFG INC
     Contract #:        WC1-351-241819-012-91
     Claim #:           WC544-297967
     Injury:            Disc in low or middle back – Rupture
     Date of Injury:    02/02/1993
     Date of Report:    02/09/1993

Dear BELINDA GAIL BROWN :

I am now handling your workers' compensation claim for Liberty Mutual. While reviewing your claim, I noticed the mileage reimbursement we requesting in 1998 for $6,518.65 was never received. We need to work out a solution to receive the reimbursement. Therefore, I am proposing a lump settlement offer of $22,000 taking credit for the $6,518.65 totalling $15,481.35 to close your future medical care. I would appreciate your immediate response in this matter.

Sincerely,

*Brian a. Cordell*
BRIAN A. CORDELL
CLAIMS CASE MANAGER I

Correspondence Copy #:  250004150

**Helping People Live Safer, More Secure Lives**

BX014J01





## LIBERTY MUTUAL INSURANCE COMPANY
5301 Virginia Way, Suite 200
P. O. BOX 300
BRENTWOOD, TN  37027
Brian Cordell
(615) 373-9555  OR 800-523-6906 EXT. 382   FAX# (615) 371-8472

TO: Atty. Oliver Kitchens                          FAX: 334-863-4313

RE: Belinda Brown  WC544-297967

Message: I am following up on my previous letter of 4/19/00 regarding the
medical settlement of your former client, Belinda Brown.  Ms. Brown has been
reimbursed for $6,518.65 for mileage that she never travelled, and Liberty Mutual
needs the money returned.   As I previously mentioned, I propose that we settle
the case for $22,000 and subtracting the $6,528.65 from that amount.  Please
advise if you wish to be involved in the medical settlement.
Thanks for your assistance in this matter.

Sincerely,

Brian Cordell
Brian Cordell

# AFFIDAVIT OF OLIVER KITCHENS, ESQ.

# OLIVER KITCHENS, P. C.

*Attorneys at Law*

OLIVER KITCHENS
oliver@oliverkitchens.com

KESA M. JOHNSTON
kesa@oliverkitchens.com

4455 U. S. HWY. 431
P. O. BOX 486
ROANOKE, AL 36274

TELEPHONE (334) 863-2181
TOLL FREE (866) 863-2181
FACSIMILE (334) 863-4313
www.oliverkitchens.com

May 24, 2007

Stephen Heninger
Heninger, Garrison & Davis, LLC
2224 1st Avenue North
Birmingham, Alabama 35203

RE: Belinda Brown

Dear Steve:

I am in receipt of your letter dated May 22, 2007, and I respond as follows: The insurance company, in my opinion, never negotiated in good faith. The only offer I ever remember getting was an offer to settle the workers comp case forever, including all future medicals. The offer was $22,000.00 less a deduction for mileage. For your information I enclose a letter from the insurance company which references that same said offer.

I did make Belinda Brown aware of this offer and I advised her against accepting it. She did reject it, which she stated she would have done even without my so advising her.

The issue has not been a financial amount we were due from the insurance company but their constant failure to allow her to obtain the medical treatment she needed and deserved. Because of their continued failure she has now suffered irreparable damage.

If you wish to prepare an affidavit along these lines I will be more than happy to sign the same. Please note I will be out of the office for a week beginning Saturday, May 26, 2007. Therefore I suggest you email or fax the affidavit to me. I can sign and have it overnighted back to you this week before I leave Friday night.

Meanwhile I thank you for your continued efforts on this case.

Sincerely,

Oliver Kitchens

OK/acm
enclosure